[Civ. No. 79. Fourth Appellate District.—September 29, 1930.]

ANNA F. LAVEN, Respondent, v. REGINA COWAN, Appellant.

W. C. Wilde for Appellant.

A. Fairchild for Respondent.

WARMER, J., *pro tem.*—Plaintiff and defendant were acquaintances for a considerable number of years prior to 1926. During the early part of 1926, some conversation took place between them, and as a result the defendant came to San Diego and lived with respondent. Appellant arrived in San Diego and went to the home of respondent May 15, 1926, and agreed to pay respondent $40 per month for room and board. Some time in July, 1926, appellant suffered a paralytic stroke affecting her left side more particularly, and was confined to her bed for some time. About the time appellant suffered the paralytic stroke the respondent told appellant "that she was hard to take care of and should be in a hospital, and she told me not to put her in a hospital, and I told her 'it is too hard for me to take care of two boys and you too, day and night', and she said 'You take care of me and you will be well paid.' "

From the statement of facts above set forth it appears affirmatively that the original contract never contemplated nursing service. When the appellant suffered the paralytic stroke it became apparent that she needed and would need nursing services over a considerable period of time; that respondent called such fact to the attention of appellant and wanted to send her to a hospital and received the answer, "You take care of me and you will be well paid." Respondent did take care of appellant. The amount of the compensation for nursing the appellant otherwise was not fixed. The time of payment was not fixed. The term of service was not fixed. During her convalescence respondent asked to be paid for the nursing services, for the period of her illness, and was told that she had been well paid in the will of appellant. In the latter part of July, 1926, an attorney went to the home of respondent and prepared a will for appellant, which was executed by her. In this instrument respondent was named executrix, and was, according to the testimony, to receive a bequest of $500 by said will. In October these parties had some misunder-

standing and finally arrived at the place where their relationship became unfriendly, and respondent told appellant it would be necessary for her to go some other place to live. Respondent maintains that appellant left her home a day or two before Thanksgiving, 1926, and appellant fixes the date of her leaving the home of respondent as of October 30, 1926. It is admitted that $40 per month for room and board has been paid. The claim of respondent is for $500 for her services as a practical nurse. Nothing has been paid for these nursing services. As stated by the respondent, ''I asked her if she was going to pay me for taking care of her and she said 'No, you are well remembered in my will.' ''

The evidence is not contradicted that the appellant told respondent ''You care for me and you will be well paid.'' Certainly the contract for nursing had its inception in the necessity for the services of a nurse. The appellant agreed to pay well, if the respondent would assume that responsibility, and the respondent did assume such responsibility, but the record does not disclose when the payment for such services would be made, nor the amount thereof, nor the term of the service. This contract, so far as the nursing services are concerned, while between the same parties, is just as distinct and separate a contract as though some nurse had been called in and appellant had said to her ''You take care of me; you will be well paid'', and the nurse had immediately entered upon her duties as such nurse.

In the case of *Sowash* v. *Emerson,* 32 Cal. App. 13 [161 Pac. 1018], it is held: Services of a nurse are not included in a contract to furnish room and board.

In the case of *Corato* v. *Estate of Corato,* 201 Cal. 155 [255 Pac. 825, 827], the court said:

''It also appears that the plaintiff herein repeatedly suggested to the deceased the matter of immediate payment, but was put off with the statement to the effect that he would pay her sometime. The facts here presented would seem to bring the case within the provisions of section 2011 of the Civil Code, which provides: 'In the absence of any agreement or custom as to the term of service, the time of payment, or rate or value of wages, a servant is presumed to be hired by the month, at a monthly rate of rea-

sonable wages, to be paid when the service is performed.'
Here there was no agreement, either expressly or by im-
plication, for the term of service, the time of payment, or
rate or value of the services, and no custom on the subject
was alleged or proved.''

In the case at bar there was a request for the services
and a promise to pay for the services. Such services had
been performed pursuant to said request and promise. No
agreement as to the term of service, time of payment, rate
or value of service was made.

We are of the opinion that under the facts as shown in
this case, the plaintiff was entitled to compensation from
month to month as the services were performed.

 The court finds that said plaintiff rendered to said
appellant services consisting of additional care, attention
and practical nursing, during the months of August, Sep-
tember, October and to November 23, 1926, of the reason-
able value of $100 per month, due and payable November
24, 1926. Appellant contends there is no evidence to sup-
port such a finding and that the action is barred by the
statute of limitations. We have held that the nursing ser-
vice was performed under a contract distinct and sepa-
rate from the original board and room contract or agree-
ment. Hence we must look to the record to find where the
nursing services began and terminated. Respondent having
filed no brief, we have gone over the record and find noth-
ing therein to furnish, with any degree of certainty the
time when the nursing services discontinued. Reading the
record in the light most favorable to the respondent the
testimony discloses such services began the latter part of
July, 1926, and continued for a period of three months.
The record shows that plaintiff is making no claim for nurs-
ing services during November. Hence the entire sum
claimed must have become due at the latest, October 31,
1926. Respondent's own testimony is as follows:

''Q. Now the period from August first to November first
would be substantially twelve weeks. Assuming that to be
so and you say that you figure the five hundred dollars to
be arrived at by computing fifty dollars a week for that
period? A. I think so, don't you think I was entitled to it
for the care I gave her? You ought to know. Q. That
would make six hundred dollars, would it not, twelve weeks

at fifty dollars a week? A. Yes. Q. How do you arrive at five hundred dollars instead of six hundred? A. I was lenient and took one hundred off, I guess. Q. You figured twelve weeks at fifty dollars a week and knocked one hundred off? A. Yes. Q. And that is the reason why it is five hundred dollars instead of six hundred dollars? A. Yes. Q. And you are not then making any charge, of course for anything after the first of November, nineteen twenty-six? A. No. . . . Q. Did you charge for November or not? A. No. Q. This five hundred dollars is for what time? A. From August when she got the stroke of paralysis. Q. And to when? A. And to November, when she was able to get up and walk.''

The above-quoted testimony shows that the services upon which plaintiff's claim is based were performed during the months of August, September and October, 1926. The defendant's answer contained a plea of the statute of limitations. The court failed to find on the issue thus presented.

Judgment reversed.

Marks, Acting P. J., and Barnard, J., concurred.