[Civ. No. 14322. Second Dist., Div. One. Feb. 7, 1944.]

THEODORE R. CARNEY, Respondent, v. RUSSELL R. HAYTER, Appellant.

Newton M. Todd and Fred A. Watkins for Appellant.

Pierson & Block for Respondent.

DORAN, J.—The defendant, in an action *in quantum meruit* for the reasonable value of work, labor and services performed, appeals from a judgment in favor of plaintiff. The trial court denied defendant's motion for a new trial, but modified its findings of fact and amended the judgment accordingly. The appeal is taken from the amended judgment. The action was brought by respondent plaintiff to recover the balance of the amount alleged to be the reasonable value of respondent's services as manager of a bowling establishment owned by appellant. Respondent alleged in his complaint that the reasonable value of the services was $6,375, that only the sum of $2,743 had been paid respondent, and that appellant had failed and refused to pay the balance of $3,632. Trial was by the court, a jury having been waived, and respondent was awarded a judgment of $3,132, with interest and costs.

Evidence as to the agreement under which respondent was employed by appellant is conflicting. According to respondent's testimony, the amount actually received by respondent during his term of employment was received as a drawing account and not as salary. According to appellant's testimony, there was a definite agreement that respondent was to work for appellant as manager of the bowling establishment at a salary of $200 per month. The checks by which respondent was paid were signed in blank by appellant and completed by respondent. With the exception of the first three, these checks bore the notation "Drawing." Respondent testified that this notation was made at the direction

of appellant, who told respondent to make such notation on the checks that were drawn to respondent and to appellant. In some instances the notation of "Drawing" on the stubs of checks made to respondent had been crossed out and the word "salary" written above it. These changes had been made by appellant, apparently toward the end of respondent's period of employment. There is a discrepancy between the testimony of respondent and that of appellant as to the time when respondent actually started to work for appellant. Respondent testified that compensation was first discussed between appellant and respondent in August of 1940, and that respondent did work preliminary to the opening of the bowling establishment from that time on until the business opened up on October 23d, for which work he received no pay.

Respondent and appellant first met in the summer of 1939, when appellant sold respondent a home in the city of Compton, in appellant's subdivision. The home sold to respondent was on the lot adjoining appellant's real estate office and respondent frequently visited with appellant at this office. According to respondent, the subject of possible business dealings between appellant and respondent was first broached about the spring of 1940. Respondent at that time was employed as a field man for a brewing company. Following is respondent's account of the conversation:

"During the course of the conversation, Mr. Hayter said to me, 'Ted, let's you and I get into something together.' I said to him, 'What do you mean, Speck?' He said, 'Well, my tract is—— I am going to close my tract out.' He said, 'I have got six or seven houses yet to sell. I want to get in something else.' 'I would like to get into something with you,' I said. 'How about your acreage on Chester Street?' He said he has got a man to buy that and subdivide it himself. I said, 'Have you anything in mind, Speck?' He said, 'No.' We had both been ex-druggists. Neither one was licensed. We had a lot in common. Talked about those things. I said, 'I haven't any money to put in a business.' He said, 'That won't be necessary; I can get it.' I said, 'I don't know, Speck.' He said, 'Think it over.' I said I had nothing in mind at that time. Neither did he. The conversation went into other channels. Nothing more said about it that day." Later, according to respondent's testimony, respondent suggested the proposition of a bowling alley;

and after invesigating the matter, appellant decided upon such a venture, and eventually a location was selected and the establishment in question constructed. Appellant financed the venture. Around the first part of August, 1940, respondent testified that the following conversation took place, as revealed by the following excerpt from the record:

"I said to Mr. Hayter, 'I would like to have an understanding as to our arrangement at the bowling alley.' He was very congenial, Mr. Hayter; very good sport. He said, 'You bet, my boy. What do you want to know?' I said, 'I want to know where I stand.' He took out a sheet that Brunswick sends out as to the recommendations for the personnel of bowling alleys they made. He said, 'I have been thinking about that myself. What will it take you to get by on to start with?' I said, I don't know. He said, 'Could you get by on $200?' I said, 'I presume I could on $200 a month.' He said, 'Yes.' He said, 'You understand that is just a drawing account.' He said, 'That is just to get started. Business may be good or bad. We don't know what to look for in the future. But I can tell you this: You stick with me. That is your drawing account, and that is all it is. When there is more money there, it is yours.' He said, 'Don't consider it a salary in any sense of the word.' He said, 'I will go further than that.' He said, 'We are going to incorporate this business and you will receive stock in it. Holly will get stock, and I will.' " Holly is appellant's brother. The following was developed upon cross-examination of respondent. "Q. Did he ever tell you when you were to receive anything in addition to $200 a month? A. The nearest date I can give you is when he said the heavy payments to Brunswick would be over in one year. Then we would have something to ourselves. Q. When did he tell you that? A. When we first opened up. Prior to the time we actually opened up. Q. Would you say that was around the first part of August, 1940? A. It was after I had my first conversation with him, but in the first part—— it was before Christmas, 1941. When you are talking to a man every day, you cannot place a conversation every day in the week. I cannot. Q. Then you understood the Brunswick obligation had to be paid off before you would receive anything in addition to $200 a month? A. That and the heavy contracts." Respondent left his position as manager of the bowling establishment early in January 1942, after a dispute with appel-

lant. The termination of the relationship between respondent and appellant apparently was the result of two incidents, first, a dispute over the working hours of an employee, and second, a heated argument over appellant's purported intoxication and behavior one evening on the premises. According to respondent, "From then on, it was very miserable." Respondent introduced expert testimony as to the reasonable value of his services as general manager of a bowling establishment of the type in question. Testimony to this effect was that the services would be worth at least $325 to $350 a month, as a conservative estimate, if the work were performed as it was supposed to be performed.

The trial court found that "between the 1st day of August, 1940, and the 5th day of January, 1942, plaintiff, at the request of defendant, did do and perform work, labor and services for the defendant, in consideration of the promise of defendant to pay the plaintiff, on request, so much money as the plaintiff therefor reasonably deserved to have." In other words, the court found that respondent was entitled to be paid what his services were reasonably worth.

Appellant contends that the evidence conclusively shows that there was an express agreement between appellant and respondent as to respondent's services; that this agreement provided that the payment to respondent of any amount in addition to $200 per month was conditioned upon the payment of the heavy obligations of the business; and that since respondent voluntarily left the employ of appellant prior to the time when the heavy obligations had been paid off, respondent was not entitled to anything more than the sum of $200 per month for the services he performed. As to the discharge of the heavy obligations of the business, respondent argues that it may be inferred from the evidence that these obligations had been paid off prior to the time respondent's services terminated. However, it will not be necessary to consider that question here. Appellant contends that respondent admitted by his own testimony upon cross-examination that it was understood that no additional salary would be paid until the heavy obligations had been discharged. The testimony in this respect is quoted above. It does not unequivocally appear that respondent admitted that $200 per month was to be the full rate of compensation for the services he had already performed. It may reasonably be inferred from such testimony that the fixing of the rate of

compensation was to be postponed until such time as the obligations in question were paid off; but an admission that the rate of compensation was to be fixed at some future time is not necessarily an admission that the amount of money already paid was to constitute full and complete compensation until the conditions for fixing the rate of compensation had been met. The findings of the trial court necessarily imply that no rate of compensation for respondent's services had been agreed upon. These findings are supported by the evidence, when that evidence is viewed in the light most favorable to respondent, as must be the case upon this appeal from the judgment in respondent's favor. It should also be pointed out that respondent's testimony indicated that respondent was under the impression he was to have an interest in the business; that he was a partner of appellant. Under these circumstances the trial court might well find that the parties had never arrived at a definite understanding as to respondent's compensation.

"Where work is done under an express contract which does not specify the compensation to be paid, the law implies a promise to pay what the service is reasonably worth." (27 Cal.Jur. 207; *Bee* v. *San Francisco & H. B. R. R. Co.*, 46 Cal. 248; *Elconin* v. *Yalen*, 208 Cal. 546 [282 P. 791]; *Laven* v. *Cowan*, 108 Cal.App. 628 [291 P. 877].) The fact that determination of the rate of respondent's compensation may have been postponed to some future time, and that respondent may have left appellant's employ before that time arrived, has no effect upon the implied promise to pay respondent what his services were reasonably worth. The findings of the trial court, upon sufficient evidence, preclude an inference that respondent must have remained in appellant's employ until discharge of the obligations of the business, in order to receive any additional compensation for his services.

In *Hunter* v. *Ryan*, 109 Cal.App. 736 [293 P. 825], the plaintiff's assignor was hired by the defendant by a letter which stated, "I have a job for you. I will give you $50 a week and a bonus to try it out." The offer was accepted and the employment continued for approximately one year when a dispute arose and the employee terminated the employment. The bonus had never been paid. Plaintiff sued for the reasonable value of the "bonus" and recovered judgment. Upon appeal the judgment was affirmed, the court

holding that respondent was entitled to recover the reasonable value of the services if the jury found such value to be in excess of the weekly sum paid. The court in its opinion declares the principle involved to be recognized in the provisions of section 1611 of the Civil Code, which declares that when the amount of the consideration is not fixed in the contract it is to be determined on the basis of *quantum meruit*.

In the present case the trial court was confronted with two conflicting versions of the transaction involved, and it was incumbent upon the court to decide which of the two versions was correct. The credibility of the witnesses was for the trial court to determine; and it cannot be said that the judgment lacks support in the evidence presented.

The judgment is affirmed.

York, P. J., and White, J., concurred.