[Civ. No. 7082. Third Dist. Jan. 31, 1945.]

SARA B. COLLIER, Appellant, v. HUGH K. LANDRAM, as Special Administrator, etc., Respondent.

[Civ. No. 7083. Third Dist. Jan. 31, 1945.]

LILLIAN COLLIER, Appellant, v. HUGH K. LANDRAM, as Special Administrator, etc., Respondent.

Gilbert Moody for Appellants.

Preston, Braucht & George for Respondent.

THOMPSON, J.—Two suits for the reasonable value of services performed by sisters of Mary Collier, deceased, were consolidated for the purpose of trial. In spite of the fact that the court found the deceased did not agree to pay either of the plaintiffs "the reasonable or any other value for such services," judgments were rendered in their favor. Sara B. Collier was awarded the sum of $400 and costs, and Lillian Collier was given the sum of $200 and costs. From those judgments the plaintiffs perfected appeals. The administrator of the estate has not appealed.

The appellants contend that the findings are not supported by the evidence, and that the amounts of the judgments are inadequate.

Mary Collier and the appellants were elderly unmarried sisters. They had two other living sisters and a brother. The deceased owned an 82-acre ranch in Merced County, upon which there was a dwelling house where she resided. She also owned 160 acres of farming land located about one mile from her home, and another 53-acre grazing ranch in the same vicinity, together with some money and other personal property. The ranches were leased for farming purposes. The appellants were several years younger than their sister Mary. Each of these sisters inherited from the estates of their parents property of equal value. Sara and Lillian had evidently consumed their resources. There is substantial evidence they were without established homes or property. Lillian had been a teacher, but was out of employment. Each appellant secured a pension under the Old Age Security Act. In April, 1933, Sara sustained a broken limb and was taken to the County Hospital. She was subsequently removed to the home of her sister Mary where she resided for nine years until Mary's death. In December, 1935, Lillian went to Mary's home for the Christmas holiday, where she remained for six years until Mary's death. Lillian's health was then not good. Both of the claimants were furnished a home and maintenance at the expense of Mary until her death. During the time they resided at Mary's home, each appellant assisted in the housekeeping and in duties incidental to the home premises. During that period of time, Mary employed a housekeeper who assisted in the household work and care of Mary. No person, other than the three sisters and the hired housekeeper, lived in that home.

Mary Collier died at the age of eighty-six years on March 8, 1942, possessed of an estate of the approximate value of $29,000. Upon proceedings duly had in Merced County, the defendant, Hugh K. Landram, was appointed and qualified as special administrator. Sara B. Collier and Lillian Collier each filed a claim against the estate for her personal services, which was rejected. These suits were then commenced for the reasonable value of services alleged to have been performed ''at the request of Mary Collier.'' The answers denied that said services were performed at the request of the

deceased; that the deceased agreed to pay any sum whatever for said services, and denied that the services were of any value beyond the sums which were paid by the deceased for the maintenance and support of the plaintiffs. The answers also alleged that the actions were barred by the provisions of sections 337 and 339 of the Code of Civil Procedure. The court adopted findings to the effect that Sara B. Collier performed services of the value of $400 and not more, and that Lillian Collier performed services of the value of $200 and not more, but that Mary Collier did not agree to pay the reasonable or any other value for said services. The court also found that the actions were not barred by the statute of limitations. Judgments were, however, rendered in favor of each plaintiff in the respective sums previously mentioned. From those judgments appeals were perfected. The administrator failed to appeal.

The findings that the deceased, Mary Collier, did not agree to pay for said services are adequately supported by the evidence. Those specific findings must be construed to mean that there was neither an actual nor an implied promise on the part of Mary Collier to pay her sisters for their services. Those findings are not in conflict with the further findings that their services were reasonably worth the specified sums for which judgments were rendered. The value of the work performed is immaterial if there was no implied agreement to pay for such services. In announcing his decision the judge said in that regard:

"The court could well give them nothing. I think that Mary never agreed to pay anything, and perhaps Sara and Lillian never expected to get anything."

The only statement of the deceased regarding payment for services of either plaintiff was testified to by Lillian with respect to her sister Sara's services. It does not amount to a promise to pay for that service. Lillian said, in response to a question as to a conversation she had with Mary Collier in 1934, that "she [the deceased] expressed herself as being *very grateful* for what Sara had done for her and she said *as soon as she got financially fixed* she intended to pay Sara well for what she had done for her." The evidence as a whole, read in the light of all the circumstances of the case, may be reasonably construed to support the findings of the court that no agreement, expressed or implied, was made to pay for the services, and, on the contrary, that the services

of the plaintiffs were gratuitously performed without the expectation of financial reward. Both appellants were elderly ladies. They were ill when they went to live with their sister Mary. They were without established homes or resources. They asked their sister Mary for no financial compensation, and they received none during the several years they resided with her. The court found that no agreement to pay for their services was made. They were close blood relatives of the deceased. ▇ The presumption, under such circumstances, is that the services were performed gratuitously through kindness, courtesy, consideration and affection for their sister, without expectation of financial reward. (*Newbert* v. *McCarthy*, 190 Cal. 723 [214 P. 442]; 27 Cal.Jur. 205, § 11.)

It is not claimed Lillian was promised by her sister Mary to be paid for her services. She first went to Mary's home in December, 1935, to spend the holiday season. Sara testified that she agreed to pay Lillian $15, which she afterward reduced to $12 per month, if Lillian would remain. Sara did not consult with her sister Mary about that payment of compensation. She did say that she talked with their brother, who approved that arrangement. Sara said, "*I had to be very careful in handling it wisely and that is all I felt I could pay her* out of the bank account."

▇ It is true that when one who is not related to another person by close ties of blood performs services which are accepted by another who receives the benefit of the work, there may be an implied promise to pay the reasonable value of such services. (*Newbert* v. *McCarthy, supra;* 27 Cal.Jur. 200, §§ 5 and 6.) ▇ But, between parties who are closely related by blood, such as sisters, the preceding presumption may not be indulged, as we have previously said. In the absence of evidence to the contrary, such services are presumed to have been rendered gratuitously without expectation of financial remuneration. ▇ The burden is on one who asserts the existence of either an expressed or an implied promise to pay for services performed, under such circumstances, to prove that agreement by a preponderance of the evidence. There is ample evidence in this case to support the foregoing presumption and findings of the court that there was no agreement, expressed or implied, to pay for the services performed by the appellants.

Under circumstances quite similar to those of the present case, a judgment in the Newbert case, *supra,* in favor of the estate of a deceased sister was affirmed on appeal. Quoting with approval from *Murdock* v. *Murdock,* 7 Cal. 511, the court said:

" 'All the circumstances of the case must be considered to ascertain what were the expectations of both parties existing while the relation continued.' 'It is incumbent upon the plaintiff to show that at the time, it was expected by both parties that he should receive such compensation, or that the circumstances under which the services were performed, were such that such expectation was reasonable and natural.' To authorize compensation, therefore, for services rendered by one relative to another, it is necessary that the circumstances be such as to reasonably warrant the inference that it was the expectation of both of the parties that compensation should be made by the recipient of the services."

In 27 California Jurisprudence 205, section 11, it is said, regarding the presumption of an intention to pay for services performed by one sister for another, in the absence of an agreement to do so:

"Where there is a blood relationship between the parties, it may well be inferred, in the absence of a direct understanding to the contrary, that pecuniary compensation was not expected by the one performing the services. Where, for example, the parties are sisters, the natural inference is that the services are spontaneous acts of courtesy and kindness prompted by the affection of one for the other and not by the expectation of remuneration."

It is true that the awards of $400 to Sara and $200 to Lillian, which were rendered, are inconsistent with the findings that no agreement to compensate the services was made. If there was no implied agreement to pay for the services, regardless of the reasonable value of such services, the plaintiffs were not entitled to recover judgments for any amounts whatever. But we are not concerned with the validity of the judgments in that regard, because they are not challenged on that account. The administrator has not appealed. The appellants may not complain of the inadequacy of the judgments since they are not supported by the findings and would be invalid because we must assume there was no agreement to pay for the services regardless of their value. Under such

circumstances, the appellants are not aggrieved by the inadequacy, if any such deficiency exists, of the amounts awarded. Moreover, we are unable to say, from all the circumstances of the cases, that the amounts awarded to plaintiffs are so grossly inadequate as to constitute an abuse of discretion on the part of the trial judge.

A new trial may be granted or a judgment may be set aside on the ground of inadequacy of the compensation awarded. (*Reilley* v. *McIntire,* 29 Cal.App.2d 559, 562 [85 P.2d 169]; 20 Cal.Jur. 104, § 67.) But a jury or trial judge possesses a sound discretion in fixing the reasonable value of services performed under an implied agreement to pay for the same, even in the absence of expert testimony of the value (*Nylund* v. *Madsen,* 94 Cal.App. 441 [271 P. 374]), based upon all of the facts and circumstances surrounding the transaction, including the nature and duration of the services performed. (71 C. J. 162, § 135.) Ordinarily, the verdict of a jury or the judgment of a court which is based upon conflicting evidence fixing the reasonable value of services performed will not be disturbed on appeal on the ground that it is either excessive or inadequate, except for a clear abuse of discretion. (*Estate of Isenberg,* 63 Cal.App.2d 214 [146 P.2d 424]; *Estate of Neff,* 56 Cal.App.2d 728 [133 P.2d 413]; 4 C.J. 874, § 2850.)

It has been held that the statute of limitations does not commence to run against a claim for the reasonable value of continuous services performed until the death of the promisor, when ''the decedent requested the plaintiff to care for him, assist him in his business and act as companion and nurse to him *as long as he lived.*'' (*Reeves* v. *Vallow,* 16 Cal. 2d 95 [104 P.2d 1017].) In the present case it is not contended such request was made to perform services until ''the death'' of Mary Collier. The only evidence of the duration of services to be performed related only to the work of Lillian. Sara testified that *she* employed her sister Lillian for the agreed compensation of $12 *per month,* which would indicate that her compensation was due and payable, if at all, at the end of each month, and not at the time of the death of her sister Mary. Under such circumstances, we assume the statute would commence to run at the end of each month. But in view of our conclusion that no expressed or implied agreement to pay for services performed was made by Mary Collier,

as the trial court determined, it is immaterial whether the statute of limitations barred the claims in whole or in part, or not at all.

Since the administrator has not appealed we may not question the amounts of compensation awarded to plaintiffs even though we assume that under the findings the court was not justified in making any award whatever.

The judgments are affirmed.

Adams, P. J., and Peek, J., concurred.