[Civ. No. 5174.  Fourth Dist.  Aug. 6, 1956.]

GEORGE C. PUNTON, Respondent, v. SAPP BROS. CON-
STRUCTION COMPANY et al., Appellants.

Harold Easton and Robert B. Hudson for Appellants.

Hillyer & Crake and Oscar F. Irwin for Respondent.

MUSSELL, J.—This is an action in which plaintiff secured a judgment for $7,822.02 and costs and a decree of fore-closure of a mechanic's lien for work and labor done and performed and for materials furnished in the construction of an office building in San Diego.  On June 25, 1954, plaintiff submitted a bid to the defendants (owner-builders) to furnish all labor and materials for the installation of suspended ceilings and acoustic tile work on the first and

second floors and on the penthouse in the building, using ⅝-inch sheetrock and United States Gypsum Quietone ceilings. The amount of this bid was $8,795. After its submission, Walter Lee Berry, Jr., plaintiff's authorized agent, had a conversation with David Sapp, one of the defendants, in which Sapp informed Berry that he had "cheaper prices" and that he would like to use gypsum tile but that Berry would have to get his price down. Berry then went to the building inspection department of the city of San Diego and talked with Mr. C. M. Bartholomew, a plan checker employed by the city. Berry asked for information as to the use of acoustical tile on the job without sheetrock and Bartholomew "checked back in the code—as he took it from the code, to see if it was permissible" to put up such an installation. Bartholomew concluded that it would be all right and so informed Berry, who then, on July 21, 1954, submitted another bid proposing to furnish and install the ceilings with United States Gypsum perforated "Auditone," mill finished with United States Gypsum flame resistant paint, all in accordance with the city building inspection regulations, outlined as "¾" Auditone, first and penthouse ceilings. ½" Auditone, second floor ceiling . . . all interlocking edges stapled." The sum bid for the work and materials was $7,655. No mention was made in this bid of the installation of sheetrock and it was eliminated by Berry on the basis of the authorization by the building department.

On July 21, 1954, plaintiff and defendants entered into a subcontract agreement in writing wherein plaintiff agreed to do the acoustical tile work, including suspended ceilings, in all areas shown on the plans, and to furnish and install United States Gypsum perforated Auditone, mill finished with fire resistant paint, for the sum of $7,845. The use of sheetrock was not mentioned in the contract or in the second bid submitted by plaintiff and he had no knowledge of plans containing a specification that such sheetrock was required in the construction of the suspended ceilings when he started work on the contract on or about August 10, 1954.

On or about September 10, 1954, after plaintiff had installed about 2,500 square feet of acoustical tile without the use of sheetrock, he was notified by the city that no further work was to be performed until the city had released the stop order. Berry then had a conversation with Sapp in which Berry informed Sapp of the stop order and Sapp said "Get down

there and get it squared away, because the job has got to keep going. We can't stop it." Berry then went to the building department and was there informed that it was necessary to put ⅝-inch sheetrock under the acoustical tile and that their previous advice to the contrary was wrong. Berry was advised that he could complete a small portion of the first floor of the building without the use of sheetrock and that it would be necessary to put ⅝-inch sheetrock under the balance of the tile, an area of approximately 1,000 square feet. Berry then informed Sapp as to what had happened at the city building department office and stated to Sapp that he had to stop work unless sheetrock was used. Berry testified at the trial that Sapp then told him to "get the job going" and that they would have to install the sheetrock; that Sapp ordered the tile that was already erected torn down and stated that he had a deadline on the building; that Sapp told him to go ahead and put the sheetrock up if that was what it took to get the job done; that he, Berry, objected to the cost of the removal of the tile already in place and Sapp stated that he did not care about the cost, that he was interested in getting the job done so that they could move in on the first of November; that he, Berry, then said "Well, will you give us a purchase order for what he have talked about here?" and Sapp replied, "Yes, I will, but get the job started. Get it rolling again."

Berry purchased sheetrock for the job and installed it throughout under the acoustical tile, pursuant to the building department's orders, and when he again asked Sapp for a purchase order for the installation of the sheetrock, Sapp stated that he would talk to his brother about it and would then give him the order. When the work was completed on September 28, 1954, Berry presented his bills to Sapp covering $1,881.60 for ⅝-inch sheetrock, $56 for sheetrock on a partition, $110 for 40 hours overtime, and $84.50 for sheetrock on an equipment room ceiling, a total of $2,132.10. The defendants refused to pay for these items, claiming that it was not their responsibility to have the sheetrock installed. Defendants paid $2,000 on the original contract and refused to pay the balance or the extra items covering the sheetrock installation. Plaintiff then filed a notice of mechanic's lien on November 10, 1954, and his amended complaint for foreclosure of this lien was filed February 3, 1955.

The trial court found, among other things, that the installation of sheetrock was not called for in the agreement of July

21, 1954; that defendants were apprised of the requirement by the city of San Diego and ordered plaintiff to proceed in compliance with the building code of said city and to install sheetrock on all ceilings contracted for the installation of acoustical tile; that said installation of sheetrock was extra work on the building and was done with the knowledge and consent of defendants and that they waived the requirement of the contract that extras be ordered in writing by the contractor; that defendants represented to plaintiff that a written purchase order would be given to plaintiff for said extra work and materials; that plaintiff, relying on said representation and upon demand of defendants that the said work be performed, did perform said extra work and install said extra material, all of the reasonable value of $1,881.60; that in addition to the installation of sheetrock, plaintiff, at the request of the defendants, performed other work and installed other material, all of the reasonable value of $250.50; that defendants refused to execute a written purchase order for said extra work and material; that plaintiff fully performed all of the conditions of the agreement of July 21, 1954, and fully complied with the demand of defendants in the performance of said extra work and the installation of said extra materials; that defendants contracted to pay for said extra work and materials and for the work performed pursuant to the contract of July 21, 1954, for the total sum of $9,977.10; that the sum of $2,000 had been paid, leaving a balance of $7,977.10 unpaid; that the defendants were entitled to offsets in the sum of $155.08, leaving a balance due of $7,822.02. Judgment was entered against the defendants for this amount and the foreclosure of the mechanic's lien and they have appealed from the judgment.

Appellants' first contention is that the plaintiff has not proved performance, excuse for nonperformance or substantial performance and therefore may not recover the balance of the contract price. They state that the contract calls for the installation of "U. S. Gypsum, perforated Auditone, mill treated, with U. S. G. flame resistant paint"; that plaintiff failed to comply with this requirement in that, admittedly, the tile was not treated with flame resistant paint. However, the evidence shows that with the installation of sheetrock between the acoustical tile and the ceiling it became unnecessary to paint the tile with flame resistant paint to comply with the building regulations. The sheetrock was sufficient

for the purpose of fire resistance. The plans called for materials which are fire resistant and plaintiff was first authorized to use flame treated tile without sheetrock to meet this requirement. He ordered Auditone flame treated tile but was unable to get it and instead used Quietone, which is identical with Auditone except for trade names for marketing purposes. Plaintiff was unable to obtain Quietone tile paint factory installed but there is evidence that the tile could be installed and painted later if necessary. ■ In view of the testimony that the installation of sheetrock fully met the requirements as to fire resistance, the failure to paint the installed tile with flame resistant paint was not sufficient to justify the defendants in their refusal to pay the contract price on the ground of nonperformance by the plaintiff.

In *Thomas Haverty Co.* v. *Jones,* 185 Cal. 285, 289 [197 P. 105], it is held that in the case of building contracts, when the owner has taken possession of the building and is enjoying the fruits of the contractor's work in the performance of the contract, if there has been a substantial performance thereof by the contractor in good faith, where the failure to make full performance can be compensated in damages to be deducted from the price or allowed as a counterclaim, and the omissions and deviations were not wilful or fraudulent and do not substantially affect the usefulness of the building for the purpose for which it was intended, the contractor may, in an action on the contract, recover the amount unpaid on his contract price, less the amount allowed as damages for the failure in strict performance.

In the instant case defendants filed no counterclaim and there is nothing in the record to indicate that plaintiff would not have painted the tile if the defendants had requested it or if it had been necessary. Under the circumstances shown, the trial court's finding that plaintiff had fully performed his contract is supported by substantial evidence.

■ Appellants' principal contention is that the trial court erroneously allowed plaintiff to recover for the installation of the sheetrock as an "extra." This argument is untenable. The evidence shows that plaintiff's bid of July 21, 1954, was submitted on the basis of the elimination of sheetrock installation. The contract signed on the same day made no reference to sheetrock and plaintiff had been informed by the building department that flame resistant tile installation would be sufficient. This fact was communicated to the defendants.

When plaintiff was notified by the building department that sheetrock would have to be installed, he immediately took the matter up with defendant David Sapp and was told to go ahead with the sheetrock installation and was also informed by Sapp that he would issue a purchase order for it. Where, as here, the parties agreed on additional compensation for the sheetrock installation, it precludes the claim of the defendants that the original contract requires the performance of such work. (*Frank T. Hickey, Inc.* v. *Los Angeles Jewish C. Council*, 128 Cal.App.2d 676, 683 [276 P.2d 52].) In *Wyman* v. *Hooker*, 2 Cal.App. 36, 41 [83 P. 79], the evidence showed that the extra work on the building was done with the knowledge and consent of the defendant and his agent and that they waived the written stipulation that a separate written estimate of the extra work should be submitted by orally agreeing to and countenancing the work without written estimates. The court said "Had it not been for defendants' consent thus given, the work would not have been thus done. He will not now be permitted to repudiate work done in the manner that he consented to, on any ground that it was not done in accordance with a previous written agreement." In the instant case, the oral agreement of the parties modifying the written contract was fully executed and the work completed as ordered by defendants, and having been fully executed defendants were liable for the additional expense. (*Nuttman* v. *Chais*, 101 Cal.App.2d 476, 478 [225 P.2d 660].)

The amount and value of the extra work was sufficiently established by the introduction in evidence of the bills and invoices covering such work and material and the trial court's finding that such labor and materials were furnished with the consent of defendants and at the reasonable market value at the current market prices for such labor and materials prevailing at the time in the city of San Diego is supported by the record. ■ A trial judge possesses a sound discretion in fixing the reasonable value of services performed. (*Collier* v. *Landram*, 67 Cal.App.2d 752, 759 [155 P.2d 652].) As is said in *Nylund* v. *Madsen*, 94 Cal.App. 441, 445 [271 P. 374]:

" 'In an action for services rendered the questions whether they were rendered, and if so, what is their value, are for the jury; and in the absence of evidence of the value of such services, or where the evidence leaves uncertain the amount plaintiff is entitled to recover, the jury may estimate their

value from their own judgment and knowledge on the subject.' ''

Since there is substantial evidence in the record to support the findings of the trial court they cannot be here disturbed. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].)

The judgment is affirmed.

Barnard, P. J., and Burch, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.