[Civ. No. 5995.   Fourth Dist.   Nov. 18, 1959.]

MAUDE WILLIAMS, Respondent, v. ROSE DOUGAN,
Appellant.

Neblett, Walker & Sullivan, John Neblett and Walker & Sullivan for Appellant.

Carl S. Kegley for Respondent.

MONROE, J. pro tem.*—This action was commenced in 1947. Plaintiff sought to recover $19,844.50 for services rendered between March, 1944, and September, 1947, in the care and feeding of horses and dogs alleged to have been at the instance and request of defendant. A first cause of action

*Assigned by Chairman of Judicial Council.

on a book account was abandoned and plaintiff has proceeded upon a common count for the care of the animals. The case was first tried in 1949, resulting in a judgment for the plaintiff. This was reversed by this court. (See *Williams* v. *Dougan,* 100 Cal.App.2d 421 [223 P.2d 631].) In that decision a detailed statement of the evidence and the contentions of the parties has been set forth.

In March, 1943, Dr. White, a friend of the defendant and appellant, died. Dr. White owned a number of dogs and horses. Prior to her death some of her dogs had been placed in the care of the plaintiff, for which Dr. White had paid. Dr. White had also placed in plaintiff's care a horse, not the doctor's property but apparently abandoned by its owner, and for which the doctor had assumed responsibility. Dr. White left all of her property to her sister, Cornelia White, who apparently had no interest in the animals. It is plaintiff's contention that defendant assumed the responsibility for these animals, as well as other animals subsequently placed in the care of plaintiff, and undertook to pay for their keep. It is to be noted that, with the exception of a horse named Patty (the property of the defendant), the defendant was not the owner of any of the animals in question. Defendant was a member of the Humane Society, interested in the care of stray or abandoned animals, and with the exception of the one horse all of the animals in question were either formerly the property of Dr. White or were stray or abandoned animals.

The first trial resulted in a judgment for the plaintiff in the approximate amount of her demands. This court reversed the judgment because the only evidence supporting the amount of the allowance to plaintiff was with respect to the reasonable value of the boarding of horses in boarding stables and the exclusive type of care given to pets of wealthy owners, while the actual care given by the plaintiff to these animals was of an entirely different character and did not justify the amount of plaintiff's demands.

A second trial in October, 1952, resulted in a mistrial. A third trial in November, 1952, resulted in a jury verdict in favor of plaintiff which was set aside upon motion for a new trial. A fourth trial was had in May of 1955, before the Honorable O. K. Morton. Judge Morton announced his informal written opinion in favor of the plaintiff but died before findings and judgment could be signed. The fifth, and present trial before the court, again resulted in a judgment in favor of the plaintiff, from which judgment defendant appeals.

The defendant and appellant attacks the findings of the trial court upon the ground that the evidence is insufficient to establish that defendant agreed, either expressly or impliedly to pay the reasonable value of plaintiff's services in caring for the animals, and was insufficient to establish the amount of the judgment. It is further contended that plaintiff cannot recover upon an oral contract for the care of animals not owned by defendant because of the bar of the statute of frauds.

Because of the earnestness with which appellant has attacked the sufficiency of the evidence the court has found it necessary to carefully review the entire proceedings. It is true that there is an irreconcilable conflict in the testimony of the witnesses, and it is also true that evidence of the plaintiff given at the various trials and in her deposition was inconsistent in many respects. Likewise, there were some inconsistencies in the testimony of the defendant.

This court may not, however, substitute its opinion of the facts for that of the trial court. Our inquiry is confined to whether there is substantial evidence to support the findings. It would serve no useful purpose to engage in a recitation of the details of the testimony. There is evidence, substantial in character, sufficient to support the findings of the trial court that the defendant and appellant expressed herself as assuming the responsibility for the care of these animals and that she requested respondent to accept them upon her premises and care for them. At the trial plaintiff contended that there was some informal agreement as to the price to be paid, asserting that she was to receive $45 per month for each horse and $5.00 per week for each dog. Upon cross-examination, however, plaintiff conceded that there was no discussion as to the amount to be paid. The defendant contended, on the other hand, that it was an informal mutual undertaking between them to care for the animals and that she, the defendant, was to furnish the food and plaintiff was to furnish the care. The plaintiff denied such arrangement. In any event, it appeared that defendant, upon learning that Dr. White's sister did not propose to undertake the care of the animals, stated in substance that she would be responsible therefor, and that she subsequently sent other animals to plaintiff's ranch and placed them under plaintiff's care. During the four years from March, 1943, to March, 1947, defendant did furnish food and pay for other food and care to

the extent of $6,000. In March of 1947, a dispute arose between the parties as to the extent of the liability and responsibility of the defendant, whereupon defendant caused some of the dogs to be removed from plaintiff's ranch and denied any responsibility for the remaining animals. No question is involved as to the care for the horse owned by defendant which remained in plaintiff's care until it died of old age. In October, 1947, following this dispute, this action was commenced.

Defendant contends that because she was not the owner of these animals and that it was of no benefit to her, there could be no implied agreement to pay for their care.　　Although the question of the direct benefit flowing to the promissor is one of evidence to be considered in determining whether the law implies an agreement, it is not controlling.　　The rule is, as laid down in *Asher* v. *Martin,* 100 Cal.App. 217 [279 P. 810], that where services are performed by the plaintiff at the request of the defendant, the law presumes and implies an agreement to pay the reasonable value thereof. (See also *Medina* v. *Van Camp Sea Food Co.,* 75 Cal.App.2d 551 [171 P.2d 445] ; and *Bassett* v. *Fairchild,* 132 Cal. 637 [64 P. 1082, 352 L.R.A. 611].)

It is further contended that because defendant was not the owner of these animals the legal obligation for their care was upon other people and that pursuant to the statute of frauds (Civ. Code, § 1624) such agreement is one to answer for the debt of another and therefore is unenforceable unless in writing. The distinction must be made between an undertaking to answer for the debt of another and an agreement which constitutes an original promise to pay for services to be rendered. Here, there was involved no agreement by defendant to pay for services rendered in case some person primarily liable therefor failed to meet the obligation, but there was an original request by defendant that plaintiff accept and care for animals delivered by defendant and animals for which defendant asserted she would stand responsible. Under such circumstances the agreement constitutes an original promise and may be enforced although oral or implied by law. (See *Southern Califorina Enterprises, Inc.* v. *D. N. & E. Walter & Co.,* 78 Cal.App.2d 750 [178 P.2d 785].) In point is *Meyers* v. *McKillop,* 37 Cal.App. 144 [173 P. 773], in which medical services were rendered for a third person at defendant's request, and it was held to be an original promise enforceable against defendant and not barred by the statute of frauds.

The most difficult question involved in this appeal is that

of the sufficiency of the evidence to sustain the findings and judgment as to the amount of the allowance. As noted, plaintiff sought to recover compensation at the rate of $45 per head per month for the horses, and $5.00 per week per head for the dogs. Upon the first appeal the court had before it a recovery in substantially those amounts. Attention was called to the fact that the care rendered by plaintiff was not that of a boarding stable or a high-class kennel, but was more in the nature of farm care and pasturage. It was held that the evidence established that the amounts claimed were the reasonable value of a type of care far superior to that actually given. Upon the present trial allowance was made upon the basis of $25 per month for the care of horses and $15 per month for the care of dogs. Credit was given for the stipulated amount of $6,000 advanced by defendant, and judgment was rendered in the amount of $6,620. Opinion evidence was offered by both parties as to the value of the care of animals during that period. None of this evidence seems to have been pinned down closely to the actual facts of the case and the care to be rendered. Plaintiff testified that the care actually given was of the value claimed. The fact that these animals were homeless animals, most of them old, none of them of any appreciable value, and that the matter involved was the mere charitable care of them, seems not to have been given much consideration by the witnesses on either side. The trial court apparently had in mind, however, that the allowance to be made was the reasonable value under all of the circumstances, and as a result the amounts referred to were awarded.

It was the obligation and duty of the trial court, upon finding that there was an implied agreement to pay for the care of these animals, to fix an amount which in the opinion of the trial court represented the reasonable value. In accordance with the rules laid down in *Nylund* v. *Madsen*, 94 Cal. App. 441 [271 P. 374], the trial court was not bound to accept the testimony of any expert. Although such evidence is admissible, it is not conclusive and may be weighed by the trial court. In the final analysis it was for the trial court, considering all of the circumstances and all of the evidence, to arrive at its own opinion and conclusion as what the total evidence established as to the reasonable value. The trial court appears to have done this and it is not for this court to substitute its opinion for that of the judge who heard the evidence.

In one particular, the findings of the trial court

appear not to be supported by the evidence. In finding Number VI it was found that it was the intention of the plaintiff and the defendant that the animals should ''remain with the plaintiff until the death of any such animal or until ordered removed or disposed of by the defendant.'' An examination of the record fails to reveal any testimony justifying such finding. To the contrary, both parties testified that it was the mutual understanding that both parties would seek to find homes for the animals and to give them to such people as would accept their care. It would follow that there was an obligation to make an effort to dispose of these animals, and, in view of the fact that they did not belong to the defendant, there is nothing to justify the conclusion that defendant was bound to continue to support them for any length of time. Apparently, however, defendant continued to furnish food and supplies for the animals until March of 1947, and the allowance of additional charges until September of that year is not necessarily an unreasonable length of time after the dispute arose. It appearing, therefore, that this finding is not material or necessary to the affirmance of the judgment, there is no reason to disturb it.

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.