[Civ. No. 149. Fifth Dist. Jan. 22, 1963.]

JIM MEREDITH, Plaintiff and Respondent, v. WALTER E. MARKS, Defendant and Appellant.

Di Giorgio & Davis and V. P. Di Giorgio for Defendant and Appellant.

Gill & Steele and George E. Steele for Plaintiff and Respondent.

CONLEY, P. J.—This is an appeal from a judgment for plaintiff in the net sum of $2,775 in an action for, personal services; the case was tried by the court without a jury.

Plaintiff sought to recover the reasonable value of personal services rendered to the defendant for the period beginning January 10, 1958, and ending March 6, 1959. During this time the defendant owned and operated a rock and gravel and ready-mix concrete business in the Kernville area. The amended complaint alleges that the services rendered included managerial, operational and maintenance activities, consisting of setting up and maintaining books and records, the hiring of personnel and supervising them in the discharge of their duties, care of plant and delivery equipment, making arrangements for and supervising timely delivery of the products of the business, consisting primarily of ready-mix concrete, operating and supervising the plant and batching equipment, solicitation of sales of defendant's products, as

well as various other activities incidental to the efficient carrying on of the business. The amended complaint alleged that the reasonable value of the services was $14,000 and that no part thereof had been paid except that sleeping accommodations in a trailer and certain meals had been furnished plaintiff of the reasonable value of $1,500.

The demurrer of the defendant having been overruled, he filed his verified answer admitting that during the period alleged in the complaint the plaintiff was associated with the defendant. He denied, however, that the reasonable value of services was $14,000 or any other sum and alleged that the reasonable value of sleeping and eating costs furnished to the plaintiff was in excess of $1,500. As an affirmative defense the defendant alleged the existence of a personal relationship of friendly sympathy between plaintiff and defendant, that there was no agreement or understanding with respect to payment for the services furnished by the plaintiff, that such services were for the mutual aid and assistance of both parties and that plaintiff had assumed the status of "one of the family" so far as the operation and conduct of the business was concerned; in the special defense, defendant further alleged that he and his family aided and assisted plaintiff in his personal and separate business affairs and that the defendant opened his home to plaintiff, had advanced for him lodging, board, laundry, tools, materials, supplies and services to the value of $7,406.90 and that also, because of this casual and mutual aid and assistance relationship of the parties, the defendant forgave and abandoned claims for damages accruing to his business and equipment resulting from neglect and inattention of the plaintiff, amounting in value to the sum of $3,200.

During the pleading stage of the case several successive bills of particulars were filed. This angle of the litigation will be considered at greater length in a later part of the opinion.

The pretrial conference order recited that the issues to be determined were as follows:

"1. Did plaintiff render services to defendant's business for which he is entitled to compensation?

"2. Length and extent of services for which plaintiff should be compensated.

"3. Reasonable value of such services, if any.

"4. Is defendant entitled to compensation for meals and housing furnished by plaintiff and monies advanced for the benefit of plaintiff and credit for damages, if any, suffered by

the defendant and caused by the plaintiff? If so, what is the reasonable value thereof?''

The trial commenced on June 29, 1961, and ended on July 6, 1961, resulting in a voluminous record of testimony of 547 pages. The court found that plaintiff rendered labor and services as an employee from January 10, 1958, to March 6, 1959, for a total of 390 days, averaging five hours per day; that the reasonable value of plaintiff's services was the sum of $2 per hour, which would entitle him to a gross payment of $3,900; that as an offset defendant furnished room and board to plaintiff for nine months of the reasonable value of $125 per month, for a total of $1,125. The court further found that all other advances of money and services made by defendant were voluntarily and gratuitously furnished and that consequently defendant is not entitled to any credit therefor; that damages caused to defendant's business equipment by plaintiff during plaintiff's employment were assumed by defendant as part of the ordinary costs of operation and were written off as such and that defendant is not entitled to any credit therefor. Judgment was accordingly entered for the net sum of $2,275. Defendant's motion for a new trial was denied by the court.

## BILL OF PARTICULARS

The defendant properly demanded a bill of particulars under section 454 of the Code of Civil Procedure, which provides in part:

''It is not necessary for a party to set forth in a pleading the items of an account therein alleged, but he must deliver to the adverse party, within ten days after a demand thereof in writing, a copy of the account, or be precluded from giving evidence thereof. The court or judge thereof may order a further account when the one delivered is too general, or is defective in any particular.''

The defendant made such timely demand, after being served with the original complaint; the plaintiff then filed a bill of particulars which the defendant thought was too general in nature. The original bill of particulars of three pages, verified by the plaintiff, consisted of a general description of the work done by him and its total value together with the details of what he conceded as an offset; the document alleged that plaintiff was not required to keep a time record of his own activities and that he was unable to state in detail the exact dates upon which the work was performed but that he engaged

in all of the activities every day while in the defendant's employ.

On September 11, 1959, defendant filed a notice of motion to require further specification in certain paragraphs of the bill of particulars or to strike the paragraphs. The motion to strike was denied by the court, and plaintiff was given six weeks within which to furnish a further bill of particulars.

On December 16, 1960, the plaintiff served and filed a supplemental bill of particulars setting out the approximate number of hours spent in various activities and alleging that all of the services aggregated 3,587 hours at a fair value of $4.00 per hour.

On December 19, 1960, defendant filed a notice of motion to vacate the supplemental bill of particulars and to preclude evidence at the trial for failure to supply a proper bill. This motion was based on an affidavit of counsel; points and authorities were filed by the respective parties. It further appears from the record that after the filing of the amended complaint in the case defendant's counsel took the deposition of plaintiff to discover information concerning such services and that the deposition resulted in a transcript of some 60 typewritten pages, during which defendant secured the detailed evidence of plaintiff with respect to the services which he claimed he had performed.

On January 23, 1961, the court denied the motions to vacate the supplemental bill of particulars and to preclude evidence for the failure to supply what defendant characterized as a proper bill of particulars.

The rationale of the requirement of our code system of pleading that a bill of particulars be furnished upon demand in connection with litigation concerning accounts is that such a bill of particulars amplifies the pleadings to which it relates in the nature of a more specific allegation of the facts claimed to exist. (*Millet* v. *Bradbury,* 109 Cal. 170 [41 P. 865]; *Edelman* v. *McDonell,* 126 Cal. 210 [58 P. 528]; *Bedell* v. *Mashburn,* 87 Cal.App.2d 417, 424 [197 P.2d 98].) Thus, for certain purposes the bill is deemed to constitute a part of the complaint. (*Silva* v. *Linneman,* 73 Cal.App.2d 971 [167 P.2d 794]; *Ames* v. *Bell,* 5 Cal.App. 1 [89 P. 619].)

It has been said also that the purpose is to furnish a defendant with the details of the items charged against him so that he may more easily prepare for trial. (*McCarthy* v. *Mt. Tecarte Land & Water Co.,* 110 Cal. 687 [43 P. 391]; *Ames* v. *Bell, supra*; *Elmore* v. *Tingley,* 78 Cal.App. 460 [248

P. 706] ; *Gilmore* v. *Hill,* 152 Cal.App.2d 881 [313 P.2d 898].) ·

 The granting or denying of a motion to secure a supplemental bill of particulars and a motion to exclude evidence are largely within the discretion of the trial court. (*Glogau* v. *Hagan,* 107 Cal.App.2d 313, 321 [237 P.2d 329] ; *Silva* v. *Bair,* 141 Cal. 599, 602 [75 P. 162] ; *McCarthy* v. *Mt. Tecarte Land & Water Co., supra,* 110 Cal. 687, 693.) It appears to us that the trial court not only had the power but full justification for its ruling in the circumstances. By the amended complaint, the bills of particulars and the deposition of the plaintiff, the defendant was advised as nearly as reasonably possible of the detail of the claims made by the plaintiff.' As is said in *Conner* v. *Hutchinson,* 17 Cal. 279, 282:

''The items must in all cases be set forth with as much particularity as the nature of the case will admit; but the law does not require impossibilities, and the party called upon to account is not subjected to the necessity of doing an impracticable thing. If the specifications are as precise and definite as he can make them, we do not see what more can be required.''

### Recovery in Quantum Meruit

Defendant urges that the evidence is insufficient as a matter of law to support a recovery in *quantum meruit.* Plaintiff testified as follows:

''Mr. Marks asked me if I would go down and maintain his equipment and help him operate his business, and asked me if I would accept a one-fourth interest in the business when it was built up or if I didn't want the fourth interest in the business and decided to leave that we would get together and settle our agreement on an hourly basis for my work, or a monthly salary.''

Defendant testified as follows: ''Q. (Mr. Di Giorgio) Did you have some conversations with Mr. Meredith concerning your association in some manner together? A. Well, actually, there was no conversation to it. I'm—I mean it was just a thing that just happened, that's all. The question of he come down there and helped me, and I helped him, that's all there was to it. There was no conversation and no agreement made.

''. . . . . . . .

''Q. (Mr. Di Giorgio) Was there any conversation between you [and Mr. Meredith] concerning your problems on the one hand and his problems on the other? A. I don't recall any particular thing, other than the fact that I was operating the plant there, at times I needed mechanical work done and stuff

like that. He had worked on my equipment previously when he was in the Kernville Garage. That's how I got acquainted with him. I knew he was a mechanic and he came down there and did a few little things.''

Mr. Meredith testified that after the original conversation, in August of 1958, Mr. Marks came home from a job he was doing out of town and ''. . . he told me he was very satisfied with the business and if I continued to operate it when he got back that we would draw formal partnership papers for the purpose of giving me one-fourth interest in the business.''

Mr. Meredith further testified that about the middle of February in 1959 he and Mr. Marks had a conversation as follows:

''I told Mr. Marks that we, some other men and ourselves were going to organize a construction corporation and that I would like to get our arrangement settled on an hourly basis or partnership arrangement, however he wanted to do it, and he told me I would be better off in the construction business and why didn't I go ahead.

''Q. Did he say anything about your request for settlement? A. No.''

Mr. Meredith also testified as follows: ''I didn't think over this period of time that I would be—that I would want to take the wages, I would have rather have a one-fourth interest in the company.

''Q. Would you still rather have that? A. Yes.''

Respondent urges, therefore, that the record shows that the defendant refused to acknowledge a partnership interest of the plaintiff in defendant's business and consequently the plaintiff is entitled to reasonable compensation for services on the *quantum meruit* theory. The following testimony was given by Mr. Marks:

''Q. You heard him testify, I think, something about a conversation concerning a partnership. Was there ever a conversation concerning a partnership? A. There was at one time during the time that I was gone away up north. When I came home on a weekend sometimes I would say in September, month of September.

''Q. Well, what was your conversation? A. I told him at that time if he could keep the thing going and make it pay to where it would take care of us that I would give him a quarter interest in it.''

Defendant also testified that Meredith told him that at one

time he had seen an attorney about drawing up some partnership arrangements.

Appellant concedes that when services are rendered under circumstances which would reasonably lead the person performing them to believe that he would be compensated therefor, recovery may be had on the theory of *quantum meruit*, but contends that the evidence here can only be construed to mean that ''during the interim period, while it was determined whether profitable operation would permit the formation of a partnership, the consideration going to each party was the mutual assistance rendered by each to the other . . . the defendant got whatever *time* was devoted by plaintiff to his business and the plaintiff got money, materials, use of defendant's equipment, . . . etc., from the defendant and his family.''

Appellant urges that the trial court erred in refusing to permit evidence that the business actually lost money while the plaintiff was there. There was a long discussion by the attorneys and the judge as to the admission of evidence of profits and loss. The judge said:

''No, I think we will have to stay away from the matter of profits and losses of this business, because as I say at this stage, no decision will be based on any net profits or losses. If this man is entitled to it, he will be given a judgment for that, irrespective of any profits or losses if he is entitled to it or he won't be given anything, regardless of profits or losses.''

The situation presented by the record was such that the trial judge could properly apply the well-known rule expressed in *Pierce Engineering Co. v. Chohon,* 196 Cal.App. 2d 516, 518 [16 Cal.Rptr. 601], as follows:

''It is elementary law that where services are rendered by one party from which another derives a benefit, a presumption of law arises from the proof thereof that the person enjoying the benefit is bound to pay what the services are reasonably worth.'' (See also *Williams v. Dougan,* 175 Cal.App.2d 414, 418 [346 P.2d 241]; *Bush v. Lane,* 161 Cal.App.2d 278 [326 P.2d 640]; *Mendoza v. Gomes,* 143 Cal.App.2d 172 [299 P.2d 707]; *Keppelman v. Heikes,* 111 Cal.App.2d 475, 482 [245 P.2d 54]; *Medina v. Van Camp Sea Food Co.,* 75 Cal.App.2d 551, 554 [171 P.2d 445]; *Bassett v. Fairchild,* 132 Cal. 637 [64 P. 1082, 52 L.R.A. 611].)

If a contract for services is not certain as to the amount of compensation, a suit in *quantum meruit* is proper, and the value of the services should then be fixed by the trier

of fact. (*Hughes* v. *Pacific Wharf etc. Co.*, 188 Cal. 210 [205 P. 105]; *Carney* v. *Hayter,* 62 Cal.App.2d 792, 797 [145 P.2d 712]; *Hunter* v. *Ryan,* 109 Cal.App. 736, 738 [293 P. 825]; *Elconin* v. *Yalen,* 208 Cal. 546, 549 [282 P. 791]; Civ. Code, § 1611.)

██ The trial judge in a case of this kind may take into consideration his own knowledge of values in fixing the compensation for services of a nontechnical character such as are involved in this suit. (*Pensa* v. *Noffsinger,* 105 Cal.App.2d 99, 101 [232 P.2d 521]; *Collier* v. *Landram,* 67 Cal.App.2d 752, 759 [155 P.2d 652]; *Nylund* v. *Madsen,* 94 Cal.App. 441, 445 [271 P. 374]; *Punton* v. *Sapp Bros. Construction Co.,* 143 Cal. App.2d 696, 701-702 [300 P.2d 271].)

### PLAINTIFF'S CONCESSION AS TO VALUE OF BOARD AND LODGING

As previously noted, the court allowed as an offset to the monies found due to plaintiff the sum of $1,125 for the use of a trailer as a place to sleep and for meals furnished by the defendant and his family. ██ Appellant points out that the plaintiff conceded in his pleadings that the value of the use of this trailer and of the meals was $1,500 and contends that the court was without power to lower this figure to $1,125. Appellant's contention in this respect is correct. When the plaintiff in his pleadings expressly stated that the value of the use of the trailer and the meals received by him was $1,500, this was a judicial admission and is a conclusive concession of the truth of a matter which had the effect of removing it to that extent from the issues. (See *Welch* v. *Alcott,* 185 Cal. 731, 754 [198 P. 626]; *Economy Home Builders, Inc.* v. *Berry,* 95 Cal.App. 106, 111 [272 P. 307]; *Brown* v. *Aguilar,* 202 Cal. 143, 149 [259 P. 735]; Witkin, California Evidence, § 224, p. 251.)

### THE EVIDENCE WITH RESPECT TO SERVICES RENDERED

As an additional contention on appeal appellant urges that the court's findings that the plaintiff worked an average of five hours a day for a total of 390 days or 1,950 hours at $2.00 per hour is not supported by the record. Respondent concedes that the court found it difficult to make an exact finding as to the number of hours worked, since neither the defendant nor the plaintiff kept any written record of time spent on defendant's job, but contends that the court could make a finding of hours worked upon taking the testimony of not only the

plaintiff but also the testimony of the defendant and his witnesses. The plaintiff testified as follows:

"Q. Can you tell us what time you usually went to work in the morning? A. There wasn't a usual time, it varied. Sometimes five o'clock in the morning, six, sometimes eight. As late as nine o'clock.

"Q. How long did you work when you went there? A. It would average about twelve hours a day.

"Q. It would average about twelve hours a day? A. Mm-hmm.

"Q. How many days a week? A. We would average six days a week.

"Q. Did you ever work on Sundays? A. Yes.

"Q. How many times did you work on Sundays? How many times during that year and a quarter? A. How many Sundays are there?

"Q. Fifty-two in a year. A. Probably thirty-five.

"Q. In addition to the other six? A. Yes.

"Q. During this period of time was there any space of time, any extended length of time that you didn't do any work at the plant that you can recall? A. Yes.

"Q. When was that? A. This was in Christmas of 1958."

The defendant and most of his witnesses testified that the plaintiff probably worked about three or four hours a day. When Mrs. Marks, defendant's wife, was questioned about the number of hours, she answered as follows:

"Q. From your observation of Mr. Meredith there around your home and at the place of business can you advise the Court approximately how many hours a day he in fact spent of and concerning the affairs of Kernville Rock Company over this entire period of time that he had anything to do with your business? A. Three or four hours a day would be ample.

"Q. Are you referring now to every day of the year? A. Yes, an average of seven days a week."

Plaintiff admitted that several days were taken away from work by him on a trip to Colorado and on other occasions. However, his testimony was that less time was taken off than was claimed by defendant. It appears to us that the trial court had ample evidence on which to base its findings with respect to the extent of services performed by the plaintiff and their value.

### ADDITIONAL OFFSETS

It is contended by the defendant that in any event he should be entitled to offsets in addition to the admitted items for

board and room. As already noted, the court found with respect to other advances made by defendant to plaintiff of money and services that they ". . . were voluntarily and gratuitously furnished by defendant and his wife, and defendant is not entitled to any credit therefor." The finding is amply supported by the evidence. The defendant gave answers to questions as follows:

"Q. You never expected or intended at any time to ever demand this money? A. I never did, not until the suit was brought up.

". . . . . . . . . .

"Q. (Mr. Di Giorgio) Did you ever make any demand of Mr. Meredith for reimbursement of any of the monies, and of the supplies, any of the bills you paid for him, and any of the other things you gave him over this period? Did you ever make any demand? A. I never made any demand.

"Q. Did you ever intend to make a demand? A. I never intended to, no."

Plaintiff testified that a discussion was had about his paying for his meals and lodging and that he told Mr. Marks that he should give some compensation for the trailer and the meals, and Mr. Marks answered that later they would get together and figure it out.

█ If services and materials rendered or given to another are thought by both the giver and the recipient to be gratuitous from the beginning, there is no right to recover therefor. The case of *Moulin* v. *Columbet,* 22 Cal. 508, 510, cited by appellant during oral argument in support of his contention that it is applicable to the plaintiff's case is a two-edged sword which destroys his own claim that he should be awarded an additional offset:

"Where services were originally rendered gratuitously, they cannot afterwards be converted into a charge. A Court will not permit a friendly act, or such as was intended to be an act of kindness or benevolence to be afterwards converted into a pecuniary demand." (See also *Payne* v. *Bank of America,* 128 Cal.App.2d 295, 307 [275 P.2d 128] ; *Estate of Hanson,* 133 Cal. 38 [65 P. 14].)

THE CLAIM FOR RECOVERY FOR NEGLIGENCE

█ What has just been said applies with equal force to the last contention made by appellant, namely, that negligence of plaintiff in the operation of certain machinery owned by defendant resulted in damages which should be allowed de-

fendant as an offset. The answer in the case filed by the defendant states that the defendant ". . . did write off, forgive and abandon any and all claims or damages and loss accruing to his business and business equipment which were in fact caused by the neglect and inattention of the plaintiff in connection with his personal conduct of some of the affairs of the defendant's said business,'' and he cannot now revive the claim. This is a concession that cannot be withdrawn, and the court was correct in refusing to do so.

The trial court is directed to modify the findings and judgment by allowing an offset of $1,500 to defendant instead of $1,125. As so modified, the judgment is affirmed.

Brown, J., and Stone, J., concurred.