[Civ. No. 24021. Second Dist., Div. Two. Feb. 25, 1960.]

TOWNSEND PIERSON, INC. (a Corporation), Respondent, v. HOLLY-COLEMAN COMPANY (a Corporation) et al., Appellants.

Milo V. Olson and Richard P. Carroll for Appellants.

Lee Combs for Respondent.

KINCAID, J., pro tem.*—This appeal is taken by defendants, hereinafter referred to as "Holly," from a judgment in favor of plaintiff, who will be called "Pierson," in the sum of $5,758.01, with interest of $2,153.30, or a total judgment of $7,911.31, plus costs of suit.

The complaint contains several causes of action and is for claimed breach of contract and for damages. A cross-complaint for damages was filed by defendants, the findings as to which are adverse to them.

Holly had a prime contract with the United States Government, Navy Department, to make airplane starters. What defendants call a tentative target price of $358.60 per starter was agreed upon until some 339 starters were built. Then Holly and the Navy agreed to what is termed a firm target price of $687.10 per starter, subject to final renegotiation. Holly was to receive 10 per cent on any savings under such renegotiation.

As a part of the firm target price figure, the sum of $30 per armature was allocated. This armature was a small but essential part of the starter.

The court found on substantial evidence that on January 30, 1952, Pierson agreed through a written purchase order to fabricate for Holly 1869 armatures, predicated upon a tentatively expressed unit price of $24.67. By terms of the agreement Holly was required to furnish certain essential parts and materials. These items were not provided by defendants on schedule thus causing production delays and consequent monetary loss to Pierson. In recognition of these facts and in consideration of plaintiff continuing to furnish the armatures at the agreed price when and as such parts and materials were provided, Holly agreed to make available to the plaintiff such additional sums relating to the subject matter of their agreement as they might procure upon price renegotiations of defendants' own prime contract with the

---

*Assigned by Chairman of Judicial Council.

United States Navy. In reliance thereon plaintiff continued the fabrication and delivery of the armatures and, but for this oral modification of the written purchase order agreement, would not have done so.

The court further found that thereafter and on or before July 26, 1953, Holly secured from the Navy upon such renegotiation an increase in excess of $5.33 per unit for each of said armatures and that by virtue thereof there was made available to Holly a sum in excess of $5.33 per unit over and above the original unit price of $24.67; that by reason of said executed oral agreement of modification and of the collection of these additional amounts on renegotiation of the prime contract Pierson is entitled to an additional $5.33 for each of the 1869 armatures delivered to defendants under the completed purchase order.

The court additionally found this sum to be due plaintiff by defendants under a common count cause of action on an express contract for the payment of money due in consideration of the manufacture of the described goods and the furnishing of said services, no part of which has been paid. The court then found that the original contract between the parties was one partly oral and partly in writing and was predicated upon a tentatively expressed price for 1869 armatures at a figure of $24.67; that the written portion of the contract was thereafter modified by the parties by an executed oral agreement and by virtue of the ultimate and final contract between the parties plaintiff is entitled to an allowance of $30 per unit for each of the armatures so manufactured by plaintiff and delivered to defendants.

During the course of their contractual negotiations and dealings Holly advanced to plaintiff on account the sum of $6,000 to be credited against billings at a price per unit to be mutually agreed upon. The court found plaintiff entitled to a judgment against Holly in the total sum of $9,981.77 less credits allowable of $4,223.76 resulting in a net judgment in favor of plaintiff of $5,758.01.

Defendants now concede that the judgment should be affirmed if there is any substantial evidence in support of the finding of the court to the effect that Holly secured from the Navy upon the renegotiation of the prime contract any sum equal to $5.33 per unit for each armature over and above the original estimated unit price of $24.67. Defendants deny the existence of any such supporting evidence.

The evidence discloses that in October, 1953, Pierson presented a letter to Holly detailing its increased costs of producing the armatures and requesting the latter to intercede in its behalf with the Navy as prime contractor for an additional compensatory allowance. In the letter of transmittal of December 30, 1953, to the Navy, Holly stated: "The contractor concurs with the sub-contractor that he has a fair and reasonable claim." Representatives of Holly testified that they presented plaintiff's claim to the Navy auditor at a hearing in Washington, D. C., at which the final price of the entire starter was sought to be determined. They say that the Navy rejected plaintiff's claim and only allowed $24.67 per armature, being the same amount originally agreed upon by the parties herein as a tentative unit price. No representative of Pierson was present when these negotiations with the Navy took place.

In December, 1954, the representative of Holly again went to Washington for a conference to negotiate a final redetermination price for the entire starter. The final agreed redetermined price per starter was $654.42, being $32.68 a unit less than the firm target price originally set at $687.10. Of this $32.68 reduction defendants' witnesses testified plaintiff's claim of $5.33 was a part, representing the difference between the allocated target price of $30 per unit for armatures and the amount finally allowed by the Navy.

Holly now states that under the incentive clause of its prime contract it is entitled to receive 10 per cent of any savings to the Navy below the $687.10 figure. Insofar as plaintiff is concerned this would amount to about 53 cents per armature and, for the first time on this appeal, defendants concede that Pierson is entitled to a credit for this amount totalling $990.57, to avoid any unjust enrichment on the part of defendants.

The evidence discloses that at some point after plaintiff began manufacturing the armatures for defendants, the latter commenced the production of them also. More than half of the armatures inserted into the starters were manufactured by defendants themselves. Defendants' witness was asked as to what price per armature was submitted on final renegotiation as being the cost of those made by defendants. He replied it represented the cost of the direct labor, the overhead and the purchase parts and materials that were required to manufacture it. He could recall no specific figure as having been submitted including the figure of $30. He was unable

to present or refer to any records from which this item could be ascertained. He stated he could not identify any records of defendants as revealing this information but that these cost figures were "just mixed in with the general cost of the whole production."

Evidence developed at the trial disclosed that with the final renegotiated contract Holly made a profit of $164,661.50 plus $13,379.27, the latter representing the 10 per cent of savings incentive figure. The profit was based on the cost of the entire starter including the $24.67 allocated to plaintiff per armature and the undisclosed cost to defendants of those armatures manufactured by the latter.

The foregoing evidence amply supports the finding of the court that the written portion of the purchase order agreement of January 30, 1952, was thereafter, for a good consideration, modified by the parties by an executed oral agreement. In consideration of plaintiff completing its contract to build the 1869 armatures at the tentative figure of $24.67 per unit, even though it was at a loss caused by the acts or omissions of defendants, the latter agreed to make available to plaintiff such additional sums relating to the subject matter as might be procured upon price renegotiation of its prime contract. Since plaintiff has fully performed its part of the agreement as orally modified, the contract as modified will be enforced whether or not defendants have performed on their part. (*D. L. Godbey & Sons Const. Co.* v. *Deane,* 39 Cal.2d 429, 433 [246 P.2d 946] ; *Keeble* v. *Brown,* 123 Cal.App.2d 126, 132 [266 P.2d 569].)

The evidence herein likewise supports the finding that defendants secured and collected, upon the final renegotiation with the Navy, an increase in excess of $5.33 per unit for each armature and that by virtue thereof this sum was made available and should be paid to plaintiff.

Plaintiff as a subcontractor was entirely dependent upon defendants to represent it in the presentation of its claim for relief to the Navy as prime contractor. Defendants at all times denied any responsibility for the losses which plaintiff sustained by reason of completing its agreement to manufacture the full number of armatures at the tentative unit price of $24.67 even though the trial court properly found that such losses were caused by the acts or omissions of Holly.

The testimony of several witnesses presented by Holly as to what transpired in the oral renegotiation meetings at Wash-

ington was based mostly on memory, supported by some personal notations purportedly made at the time. The trial judge was entitled to weigh this testimony with all other evidence in the case. (*Burns* v. *Radoicich,* 77 Cal.App.2d 697, 700 [176 P.2d 77] ; 19 Cal.Jur.2d 240, § 475.)

This evidence disclosed that it was in the financial interest of defendants to hold down the costs insofar as plaintiff was concerned, thus securing a 10 per cent incentive savings reward for any amount so saved, while at the same time presenting its own full costs as being that to which Holly was entitled. Further, that defendants had succeeded in getting their tentative price for the starter raised from $358.60 to $687.10 each, with an allocation of $30 per unit for each armature. That of the comparatively small reduction of $32.68 in the final redetermined price of the starter Pierson's claim was disallowed whereas it may be reasonably concluded that Holly was allowed its full allocated price of $30 per armature for those manufactured by it.

Finally, the court had before it undisputed evidence that as a result of the finally negotiated price Holly had made an over-all profit on its prime contract with the Navy of $178,040.77.

From the foregoing evidence the court was justified in believing that Holly was unjustly enriched by its own acts at the expense of plaintiff by being paid for work, labor and materials furnished by Pierson and for which the latter remained unpaid. This issue could properly be considered under the common count cause of action in plaintiff's complaint. (*Frank* v. *Tavares,* 142 Cal.App.2d 683, 689 [298 P.2d 887].) ▮ As was said in *Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325 at 339, 340 [263 P.2d 655]: "It is fundamental, of course, that the gravamen of a quasi-contractual action grounded on unjust enrichment is the equitable principle that a person should not be allowed to enrich himself at the expense of another. [Citing cases.] ▮ It presupposes the acceptance and retention of a benefit by one party with full appreciation of the facts, under circumstances making it inequitable for the benefit to be retained without payment of the reasonable value thereof. (17 C.J.S., Contracts, pp. 322 et seq.)"

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.