[Civ. No. 26444. Second Dist., Div. One. Feb. 13, 1963.]

CHALLENGE CREAM AND BUTTER ASSOCIATION, Plaintiff and Respondent, v. ROYAL DUTCH DAIRIES, Defendant and Appellant.

A. P. G. Steffes for Defendant and Appellant.

Knapp, Gill, Hibbert & Stevens and Karl K. Roos for Plaintiff and Respondent.

WOOD, P. J.—Appeal by defendant Royal Dutch Dairies from an order denying its motion to discharge a writ of attachment. (A motion of defendants Veldhuis and Hilarides, individually, as copartners doing business as Firestone Dairies, to discharge writ of attachment [as to them] was granted.)

On March 30, 1961, defendant Royal Dutch Dairies assigned its assets to defendant Richard M. Durall for the benefit of creditors. The assignee, Durall, conducted the business of Royal Dutch Dairies about nine months (until December 26) when the assignor (Royal Dutch Dairies), pursuant to court order in another action, took possession of the assets then held by the assignee. During the last month that Durall was acting as assignee he purchased milk from the plaintiff herein, Challenge Cream and Butter Association.

The present action, in which the writ of attachment was issued, is to recover $22,927.92 for milk sold by plaintiff to the

assignee, and to recover $101.09 representing the amount of an unpaid check drawn by the assignee.

The affidavit for attachment stated that defendants are indebted to plaintiff in the sum of $23,029.01 "upon an implied contract" for the direct payment of money, to wit: reasonable value of goods sold and delivered.

The sheriff attached the place of business of Royal Dutch Dairies, including furniture, equipment, and milk processing machinery.

Prior to the assignment, Royal Dutch Dairies, a corporation, was engaged in the retail business of selling milk which it had purchased at wholesale prices from Firestone Dairies, a partnership, the members of which were defendants Ray Veldhuis and Peter Hilarides.

When the assignment was made to Durall by Royal Dutch Dairies, the directors of that corporation were Ray Veldhuis, president, Peter Hilarides, secretary, and Durall (who was then the attorney for the corporation).

The assignment provided, among other things, that the assignee should hold the assets in trust and reduce them to money as soon as that could prudently be done, or to continue the business, whichever in the judgment of the assignee would be best calculated to net the best returns for the creditors; that any contract made by the assignee in connection with the trust shall not be binding upon him in his personal capacity, "but shall bind said assignment estate and the assignee in his representative capacity."

The assignee continued to purchase milk from Firestone Dairies until November 23, 1961, at which time he began purchasing milk from plaintiff, Challenge Cream and Butter Association.

On November 2, 1961, in an action commenced by Durall (case no. 779497, Superior Court, Los Angeles County), he, upon filing a $10,000 bond, obtained a preliminary injunction restraining Royal Dutch Dairies, Veldhuis, and Hilarides from doing certain acts which allegedly interfered with the business which he, as assignee, was conducting. On December 4, 1961, upon a motion of the parties thus restrained, an order was made in said case (no. 779497) that the injunction be dissolved on December 8, 1961, unless Durall filed a bond in the amount of $125,000. He did not file the bond. On December 26, 1961, in an action commenced by Royal Dutch Dairies apparently for the purpose of rescinding the

assignment (case no. 728893, Superior Court, Los Angeles County), it (Royal Dutch), upon filing a $165,000 bond, obtained a preliminary injunction restraining Durall from withholding possession of the assets of said business. On said date, Royal Dutch took possession of the assets. (The references in this paragraph to the two other cases are based upon the original files in the county clerk's office, which files were considered by the trial judge, as stated in his memorandum opinion.)

The first three of the six causes of action in the complaint are to the effect that Durall is indebted to plaintiff. The first cause of action is based on a written contract between plaintiff, as seller of milk, and Durall, the assignee, as purchaser; and it is to recover $22,927.92 for milk sold to the assignee between November 22 and December 26, 1961. The second cause of action is to recover $101.09 upon a dishonored check which was drawn by the assignee. The third cause of action alleges that between said dates, at the special instance and request of the assignee, the plaintiff sold to the assignee dairy products of the agreed value of $22,927.92.

The fourth cause of action alleges that the assignee's purchases of dairy products, as alleged in the first cause of action, were for the use and benefit of defendant Royal Dutch Dairies; that said defendant received the benefit of said purchases in that it sold said products to its customers and has received and now retains the revenue derived from said sales; that although plaintiff demanded that defendant Royal Dutch Dairies pay $22,927.92, the reasonable value of said milk products, and that it pay $101.09, the amount of the dishonored check, it has refused to pay any part thereof; that by reason of said premises, the defendant Royal Dutch Dairies has been unjustly enriched in the amount of $23,029.01.

The fifth cause of action alleges that on December 26, 1961, defendants Veldhuis and Hilarides, individually, and as copartners doing business as Firestone Dairies, and defendant Royal Dutch Dairies, took possession and control of the assets of Royal Dutch Dairies by reason of a preliminary injunction restraining Durall from interfering with said defendant's possession, and since said date said defendants have retained possession of said assets from which the amount of $23,029.01, now due to plaintiff from Durall, as assignee, could have been paid.

The sixth cause of action alleged that defendant New

Hampshire Insurance Company had obligated itself as surety for Durall for the benefit of plaintiff.

This action was commenced on January 31, 1962.

On February 8, 1962, Royal Dutch Dairies made a motion to discharge the writ of attachment on the grounds that: the writ was issued improperly; plaintiff's purported cause of action against said defendant is not founded upon a contract, express or implied; it appears from plaintiff's first three causes of action against Durall, as assignee, that plaintiff sold all milk pursuant to plaintiff's contract with Durall, and that title to the milk passed exlusively to him; Durall at all times was acting as the purported assignee for the benefit of creditors, but he, in obtaining the milk from plaintiff, was not acting for the benefit of Royal Dutch Dairies, and was acting adversely to it; plaintiff sold milk to Durall over the repeated objections of Royal Dutch Dairies; all the milk was delivered to Durall while he was in possession of the premises of Royal Dutch Dairies adversely to its claims; when Royal Dutch Dairies was restored to possession of its premises, it had filed a $165,000 bond to indemnify Durall, as assignee, against any damage he might sustain by reason of the injunction.

The affidavit of Ray Veldhuis, in support of the motion to discharge the writ, stated in part: That before plaintiff (Challenge) began selling milk to Durall, he (Durall) had obtained a restraining order which deprived Royal Dutch of possession of its premises, and during the time it was deprived of possession, the defendant Durall was conducting the business in his own name and as the sole proprietor. Durall retained all the proceeds from milk delivered to him by Firestone Dairies. The defendants, other than Durall, objected to the sale of milk by plaintiff to Durall. When Durall discontinued buying milk from Firestone he owed $5,337.42 to Firestone for milk delivered, and at a later date he gave a check to Firestone for that amount but the bank refused payment thereof because insufficient funds were on deposit. All money which was on the premises when Royal Dutch repossessed the business was used to pay accrued wage claims, and Royal Dutch did not obtain any property belonging to plaintiff.

The affidavit of George E. Atkinson, in support of the motion to discharge the writ, stated in part: He is the attorney for Veldhuis, Hilarides, and Royal Dutch. On November 21,

1961, Durall as assignee served notice of cancellation of his contract to purchase milk from Firestone. Thereupon, affiant told Mr. Hibbert, one of the attorneys for plaintiff, that Durall was acting as assignee for the benefit of the creditors of Royal Dutch, that there was serious controversy between the assignee and the assignor, that the assignee had not paid Firestone for milk, and that if plaintiff sold milk to him it (plaintiff) might not be paid. Later, Mr. Hibbert informed affiant that plaintiff had decided to enter into a contract to sell milk to Durall, as assignee. On December 4 affiant caused a written notice (notice by Royal Dutch of rescission of assignment— marked exhibit A and attached to affidavit) to be served on plaintiff, but plaintiff did not reply to the notice. None of the milk sold by plaintiff to Durall, as assignee, was used for the benefit of Royal Dutch, and no revenue from the sale of such milk was received by Royal Dutch. (The written notice, exhibit A, which was given to plaintiff by Royal Dutch, was in substance that the authority of Durall to act as assignee of Royal Dutch had been rescinded.)

The affidavit of defendant Durall, in opposition to the motion to discharge the writ, stated in part: The creditors of Royal Dutch included 86 unsecured creditors. Since the assignment, Veldhuis and Hilarides have followed a course of harassment and threats to force affiant to sell the assets of Royal Dutch to them for less than a fair price. After Royal Dutch had posted the bond ($165,000 bond) in its action against Durall, he (affiant) was willing for Royal Dutch to go into possession of the assets as constructive trustee for affiant, but he expected that the current obligations would be paid from the assets. Royal Dutch has not paid the current obligations, although it has collected approximately $75,000. When Royal Dutch took possession, Veldhuis, as president, received about $1,500 cash from affiant, and received milk of the approximate value of $3,000, and received current accounts receivable in the amount of $32,269.69, of which amount at least $27,000 was from sale of milk delivered by plaintiff (Challenge). On January 26, 1962, affiant received from Hilarides an offer to buy the assets of Royal Dutch for $331,100. On January 31 affiant accepted the offer, but Hilarides has not purchased the assets.

Another affidavit of Ray Veldhuis was in substance a denial of the statements in Durall's affidavit, except that Veldhuis stated that Hilarides did make an offer to buy the assets,

but that the offer was made because Durall had represented to the court that by reason of the injunction (in favor of Royal Dutch) he would be prevented from selling the assets for $331,000. That Hilarides offered to purchase all the property for a greater amount ($331,100).

Appellant's contention or points on appeal are in substance the same as its statement of grounds for the motion to discharge the writ. It (Royal Dutch) argues the sale was to Durall; there was no relationship of debtor and creditor between it and plaintiff (Challenge); the first three causes of action show that the contract was solely with Durall; the fact that the fourth and fifth causes of action resemble common counts does not confer upon plaintiff a right of attachment; any claim of plaintiff that there was an implied contract with Royal Dutch is disproved by the first three causes of action wherein it is alleged that the milk was sold and delivered to Durall; appellant was not unjustly enriched when it was restored, pursuant to a preliminary injunction, to assets claimed by it.

The first three causes of action allege that Royal Dutch made an assignment to Durall for the benefit of its creditors. It is true that those causes of action are directed only against the assignee, and are based upon the written contract between Challenge (plaintiff) and the assignee. An argument of appellant (Royal Dutch) seems to be that since Challenge has a cause of action against the assignee upon the express written contract, there cannot be liability on the part of the assignor upon a theory of implied contract arising from circumstances connected with the transaction. The fourth and fifth causes of action also allege that Royal Dutch made an assignment to Durall for the benefit of its creditors. These causes of action are to the effect that the purchases by Durall, the assignee, were for the use and benefit of the assignor (Royal Dutch), which received the benefit thereof in that it sold said milk products and retained the revenue derived therefrom; that the assignor has been unjustly enriched; and that the assignor, pursuant to court order, has taken possession of the assets which were in possession of the assignee, and from which assets the amount due to Challenge could have been paid. Under the assignment the assignee was authorized to continue the business, and it was further provided therein that any contract made by the assignee in connection with the business should "bind the assignment estate." The assignee

continued or operated the business and made the contract under which he created the indebtedness to Challenge. It appears from the fourth and fifth causes of action and the affidavits that the assignor Royal Dutch rescinded its assignment for the benefit of creditors and took possession of the assigned assets and other assets which accumulated during the operation of the business by the assignee. In so taking possession of such assets for its own benefit, it is presupposed, for the purposes of this motion, that Royal Dutch not only accepted the benefit of the Challenge contract (which, according to the assignment, bound the "assignment estate"), but also accepted the detriment of it, or obligation to pay the reasonable value of the milk. In viewing the affidavits in the light favorable to the order of the trial court, it appears, for the purposes of this motion, that Royal Dutch, in so taking possession of the assets, received about $1,500 from Durall, and also received Challenge milk and accounts receivable from sale of Challenge milk (by the assignee) of the approximate value of $30,000; and thereby Royal Dutch was unjustly enriched.

In *Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325, 339-340 [263 P.2d 655], it was said: "[T]he gravamen of a quasi-contractual action grounded on unjust enrichment is the equitable principle that a person should not be allowed to enrich himself at the expense of another. [Citations.] It presupposes the acceptance and retention of a benefit by one party with full appreciation of the facts, under circumstances making it inequitable for the benefit to be retained without payment of the reasonable value thereof."

In the present case the trial court could properly conclude that the fourth and fifth causes of action, as against appellant (Royal Dutch), were upon an implied contract for the direct payment of money. Section 538 of the Code of Civil Procedure provides that a writ of attachment may be issued in an action upon such a contract.

An issue as to the extent of a defendant's liability, if any, may not be determined on a motion to discharge a writ of attachment. (See *Minor* v. *Minor,* 175 Cal.App.2d 277, 280 [345 P.2d 954]; *Rose* v. *Pearman,* 163 Cal.App.2d 480, 484 [329 P.2d 501].)

Appellant asserts further that the affidavit for a writ of attachment was defective and insufficient to justify the issuance of the writ, for the reason the "subscribed and

sworn to'' certificate signed by Marguerite E. Lavery does not show that she was a notary public or other person authorized to administer an oath. It is true that the words ''Notary Public'' do not appear in writing in connection with the certificate, and it is true that the portion of the seal as shown on the photostatic copy of the affidavit in the clerk's transcript does not show that she is a notary public. The imprint of the seal on the original affidavit in the superior court file shows the following words: ''Marguerite E. Lavery Notary Public Los Angeles Co. Cal.'' The affidavit was sufficient.

The order is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied March 11, 1963, and appellant's petition for a hearing by the Supreme Court was denied April 9, 1963.