[L.A. No. 30993. Oct. 22, 1979.]

FAYETTE L. EARHART, Plaintiff and Appellant, v.
WILLIAM LOW COMPANY et al., Defendants and Respondents.

504

**COUNSEL**

Robert C. Coates, Eichhorn, Fielden, Wetherbee & Coates and Gregory S. Day for Plaintiff and Appellant.

Norvin L. Grauf for Defendants and Respondents.

**OPINION**

**TOBRINER, J.**—In this case we must determine whether a party who expends funds and performs services at the request of another, under the reasonable belief that the requesting party will compensate him for such services, may recover in quantum meruit although the expenditures and services do not directly benefit property owned by the requesting party.

In the instant case, plaintiff asserts that, at defendant's request, he expended sums in commencing the construction of a mobile home park on land owned by defendant and on an adjacent parcel owned by a third party. When defendant refused to compensate plaintiff for any of the services so rendered, plaintiff sued in quantum meruit.

While permitting plaintiff to recover the sums which he expended on the parcel actually owned by defendant, the trial court denied plaintiff recovery for the expenses incurred in construction on the adjoining parcel, reasoning that under past California cases defendant received no direct "benefit" from construction on the property that he did not own. Plaintiff now appeals from the trial court's adverse judgment limiting his recovery, contending that he should be permitted to recover in quantum meruit despite the absence of defendant's ownership of the adjoining parcel.

 As we shall explain, plaintiff is entitled to prove defendant's liability for the reasonable value of plaintiff's services rendered on both parcels of land. The trial court in the instant case apparently felt constrained to limit plaintiff's recovery because of this court's decision in

*Rotea* v. *Izuel* (1939) 14 Cal.2d 605 [95 P.2d 927, 125 A.L.R. 1424]. In that case the court denied quasi-contractual recovery on the ground that the only "benefit" received by the defendant was the "incidental benefit" which he may have found in the satisfaction of obtaining compliance with his request.

In view of the facts of the present case, we reject such a broad limitation of the remedy of quantum meruit. Here, plaintiff claims that defendant urged him to begin work on the mobile home park for which he and defendant had long been negotiating. Plaintiff further asserts that, under defendant's supervision, he immediately commenced construction, justifiably relying on his belief that defendant would pay for the requested performance. If the trial court finds these facts to be true and, thus, that plaintiff rendered the very performance that defendant requested, we believe that principles of fairness support plaintiff's recovery for the reasonable value of his labor.

This appeal comes before us on an abbreviated record. The facts, which are sufficient for the resolution of the general legal issue presented, have been gleaned from the pleadings, the partial transcript, the trial court's findings, and the parties' briefs on appeal. (Cf. *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 367 fn. 4 [90 Cal.Rptr. 592, 475 P.2d 864].)

Plaintiff Fayette L. Earhart is the president and owner of Earhart Construction Company. For approximately two months in early 1971, plaintiff and defendant William Low, on behalf of defendant William Low Company,[1] engaged in negotiations for the construction of the Pana Rama Mobile Home Park. These negotiations culminated in a construction contract which was to become binding when defendant obtained the requisite financing to build the park and when plaintiff secured a labor and material or performance bond for the work. Neither condition was ever fulfilled.

The proposed park was to cover a number of acres, some of which defendant owned, and the balance of which were owned by Ervie Pillow. In May 1971 defendant and Pillow entered into an escrow agreement in which Pillow agreed to sell her tract to defendant on the condition that

---

[1]Plaintiff's complaint named both the individual and the corporation as parties defendant. Plaintiff does not appeal the trial court's judgment exonerating the individual defendant from personal liability, but because of the close identification of William Low with the corporate defendant, and for ease of discussion, we refer to a singular defendant throughout this opinion.

defendant obtain financing for the mobile home park. According to plaintiff, a "special use permit" allowing the construction of a mobile home park on Pillow's land was of particular interest to defendant. Plaintiff claimed that the permit would expire on May 27, 1971, without possibility of renewal, unless work on the property were "diligently under way" by that date.

Plaintiff maintained that on May 25, 1971, defendant telephoned him to inform him that he had secured the necessary financing for the park, and, waiving all conditions to the contract, urged plaintiff to move equipment onto the property and commence work immediately in order to "save" the special use permit. Plaintiff's crew began work at once and continued to work for one week, often in the presence of defendant. On June 1, 1971, plaintiff submitted a progress bill to defendant and at that time learned that defendant had not secured the requisite financing. Defendant refused to pay plaintiff's bill, revealing that in the interim he had signed a construction contract for the park with another firm.

At trial, defendant took issue with a number of plaintiff's assertions. According to defendant, the validity of the Pillow permit was irrelevant to his plan to construct a mobile home park since he had obtained a permit himself, and, as he testified, "As long as I had my permit, [Pillow's auto] court could be developed." Furthermore, defendant denied telephoning plaintiff and asserted that he had never asked plaintiff to work "specifically" on the Pillow property. Rather, defendant claimed that plaintiff began construction before either of the conditions to the written agreement had been met, in order to get "kind of a leg up there in [defendant's] eyes towards getting the contract eventually. . . . [Plaintiff] was going to take a gamble in there subject to requisite financing" and without charge to defendant.

At the conclusion of the trial, the court determined that plaintiff was entitled to recover from defendant on a theory of quantum meruit.[2]

---

[2]Plaintiff's suit against defendant sought damages in addition for breach of oral contract, fraud, and intentional and negligent misrepresentation. Thus plaintiff's complaint alleged, for a first cause of action, that defendant breached an oral agreement between the parties "by failing to obtain the requisite financing [for the mobile home park] and by preventing plaintiff from proceeding with construction." The trial court granted defendant's motion for judgment on the pleadings as to this cause of action as well as to plaintiff's tort cause of action. According to the trial court, "Because of the lateness of the bringing of this case to trial and the defects in the pleadings, the plaintiff was able to go forward only on one cause of action, and that cause of action was a cause of action in quantum meruit or that equitable remedy which accords to a person the fair

Stating that "[g]enerally speaking, the court has a tendency to believe the testimony of Mr. Earhart and to disbelieve the testimony of Mr. Low,"[3] the trial court specifically found that plaintiff had furnished machinery, labor, and materials to defendant's property "at the special instance and request of defendant."

In assessing the amount of the damages to which plaintiff was entitled under quantum meruit, however, the court limited plaintiff's recovery to the reasonable value of the work done on defendant's tract, declining to award damages for the reasonable value of services rendered in construction on the Pillow property. Acknowledging that plaintiff's services "were furnished both to the Pillow property and to the Low property," the trial court interpreted this court's decision in *Rotea* v. *Izuel, supra,* 14 Cal.2d 605, as precluding plaintiff's recovery with respect to the work on the Pillow property. The court stated in this regard: "[I]t is an established proposition of law in California . . . that you can't get recovery for services furnished to a third person, even though the services were furnished at the request of the defendant. . . . So the plaintiff can't recover for services furnished Mrs. Pillow. . . . [E]ven though the plaintiff renders services or delivers a product, if it is of no value to the defendant, then the defendant doesn't pay for it. ▮ ▮▮▮ All he pays for is the value of what he got, notwithstanding how much it cost the plaintiff to produce it. That's the proper measure in this case."[4]

Because the court construed the governing cases as barring recovery for work on the Pillow property as a matter of law, the court made no factual findings as to whether plaintiff had actually furnished labor and materials to the Pillow property at defendant's request nor as to the value of any work that may have been done. Plaintiff now appeals from the trial court

value of something rendered to another in various situations."

Plaintiff appealed both the trial court's limited award of recovery in quantum meruit, and the trial court's judgment on the pleadings as to the breach of contract count. The trial court properly dismissed plaintiff's contract cause of action, however, for "defects in the pleadings." While plaintiff alleged that defendant breached an oral agreement by failing to obtain financing, plaintiff neglected to allege any promise by defendant to obtain financing, or any failure by defendant to attempt in good faith to secure financing. We thus address plaintiff's appeal based solely on the issue of recovery in quantum meruit.

[3]The court continued, à propos of defendant's denial of concern for the pending expiration of Pillow's permit: "I don't think Mr. Low was being truthful with us. I think he remembered very well the incidents that gave rise to this aborted transaction, and I think he just conveniently forgot such things as a telephone call."

[4]Although a trial judge's opinion may not be used to impeach a finding, it may be referred to for the purpose of determining the process by which he reached his conclusion and as an aid in interpreting findings where necessary. (See *Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740, 749-751 [47 P.2d 273].)

judgment insofar as it denied him recovery for services allegedly rendered with regard to the adjoining Pillow parcel.

To understand the trial court's seemingly arbitrary refusal to grant complete recovery on the basis of quantum meruit, we must first examine this court's decision in *Rotea* v. *Izuel, supra.* Briefly to summarize the facts in that case: plaintiff's wife died, leaving five minor children in plaintiff's care. Plaintiff's sister-in-law Eugenia subsequently moved into plaintiff's home to assist in taking charge of the children. Although Eugenia later became ill, she nonetheless continued to care for the children.

Antonio Izuel, Eugenia's brother, also lived in plaintiff's home. Antonio helped support the family and, over the years, along with plaintiff and plaintiff's children, took care of Eugenia during her illness. On Antonio's death, plaintiff brought suit to recover from Antonio's estate the reasonable value of services rendered by plaintiff in caring for Eugenia. In support of plaintiff's claim, plaintiff's children testified that Antonio "promised to pay [their] father out of his estate for Eugenia's care."

Preliminarily this court stated that plaintiff could not recover upon his claimed oral agreement, since it violated the statute of frauds, and that plaintiff's cause of action, "if any, was one for the reasonable value of the services performed." (14 Cal.2d at p. 608.) The court distinguished cases that admitted proof of an oral agreement to show that the parties did not intend any services to be gratuitous, on the ground that there "the services were performed with respect to and for the direct benefit of the deceased person and under such circumstances as to create an original obligation implied in law to pay the reasonable value of such services, which obligation arose independently of the terms of the invalid oral agreement." (*Id.,* at p. 609.)

The court declined to extend the rule of those decisions to permit quasi-contractual recovery from Antonio's estate. As the court remarked, "The reason for the rule seems to be that the parties should ordinarily be required to rely upon their agreement and that in the absence of a valid agreement between the parties, the law will not imply an obligation unless the failure to imply such obligation will result in the unjust enrichment of the defendant." (*Id.,* at pp. 610-611.) Tracing the principle of unjust enrichment in this context to the ancient action for money had and received, the court refused to assess liability without first finding receipt of a *"direct benefit."* (Italics added.) (*Id.,* at p. 611.) Since the only "benefit" received by Antonio was the "incidental benefit which he may

[have found] in the satisfaction of obtaining compliance with his request," the court denied recovery. (*Id.*)

While the result which the court reached in *Rotea* is understandable in light of the mutual exchange of familial support which the record indicates, the court's statement that the satisfaction of obtaining compliance with one's request will not support quantum meruit recovery has ever since its rendition been criticized for its harshness. Commentators have attacked the requirement of a "direct benefit" to the defendant as "purely an historical one." (Comment, *Quasi-Contracts* (1940) 28 Cal.L. Rev. 528, 530 & fn. 18. See also Note, *The Necessity of Conferring a Benefit for Recovery in Quasi-Contract* (1968) 19 Hastings L.J. 1259, 1261-1263.)

Since the action for money had and received—the predecessor to the action for reasonable value of services rendered—originated in an equitable bill for the recovery of money tortiously retained by the defendant, the medieval courts inevitably held the action to apply in cases in which the defendant had received an actual "benefit." (See *Philpott* v. *Superior Court* (1934) 1 Cal.2d 512, 518-526 [36 P.2d 635, 95 A.L.R. 990]. See generally Goff & Jones, The Law of Restitution (1966) pp. 3-11; Ames, *The History of Assumpsit* (1888) 2 Harv.L.Rev. 1, 53.) Thus the courts used the action to force disgorgement from anyone who wrongfully came by money or property to which the plaintiff was entitled; the law implied an obligation to pay in order to restore sums, or "benefit," unfairly retained by the defendant.

While the unfair receipt of a tangible benefit to the defendant may have inspired the common law courts to order restitution, the court in *Rotea* need not have interpreted the ancient principle of unjust enrichment so literally. Even under contemporary authorities, the court could have recognized, consistent with the orthodox principle of unjust enrichment, that a defendant who receives the satisfaction of obtaining another person's compliance with the defendant's request to perform services incurs an obligation to pay for labor and materials expended in reliance on that request.

Section 1 of the Restatement of Restitution, which predates the decision in *Rotea,* provides that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." (Rest., Restitution (1937) § 1.) A person is enriched if he has "received a benefit." (*Id.,* com. a., p. 12.) Furthermore, "[a] person confers a benefit upon another if he . . . performs services *beneficial to or*

*at the request of the other. . . ."* (Italics added.) (*Id.,* com. b., p. 12.) ■
■■■■ While the Restatement does not establish that performance of services at the request of another uniformly results in the unjust retention of "benefit," the Restatement recognizes, unlike the decision in *Rotea,* that performance of services at another's behest may itself constitute "benefit" such that an obligation to make restitution may arise.[5]

To avoid the harshness of the reasoning in *Rotea* the Courts of Appeal have subsequently drawn frequent exceptions to the requirement of "direct benefit." In cases involving services, these courts have often implied an obligation to pay based upon the theory that performance at another's request may itself constitute a benefit. In *Williams* v. *Dougan* (1959) 175 Cal.App.2d 414 [346 P.2d 241], for example, plaintiff sought to recover in quantum meruit for the reasonable value of services he had performed in caring for animals placed in his custody by defendant. Defendant argued that since the animals did not belong to defendant, but had been left homeless by the death of their owner, plaintiff's services had conferred no "benefit" upon her.

The court held, however, that defendant's request that plaintiff accept and care for the animals sufficiently implied a promise to pay for the reasonable value of the services; as to the absence of benefit, the court concluded that "[a]lthough the question of the direct benefit flowing to the promisor is one of evidence to be considered in determining whether the law implies an agreement, it is not controlling." (*Id.,* at p. 418.) Viewing the absence of "direct benefit" as an issue of evidentiary significance only, the court permitted plaintiff to recover the reasonable value of services he had performed in justified reliance on defendant's request.

Similarly, the court in *Bodmer* v. *Turnage* (1951) 105 Cal.App.2d 475 [233 P.2d 157] relaxed the judicial definition of "benefit" in order to grant recovery to a party who had justifiably relied on another's request for performance. The facts of that case remarkably resemble those of the

---

[5]We note that while restitution ordinarily connotes the return of something which one party has "received" from another, the term may also refer to a broader obligation to pay. Thus, "[i]t is enough that the plaintiff has rendered the very performance for which the defendant bargained . . . . Service or forbearance rendered at the defendant's request is regarded as having been received by him; and the fair price that it would have cost to obtain this service or forbearance from a person in the plaintiff's position can be recovered. Judgment will be given for the value of services so rendered, . . . even though there never was any product created by the service that added to the wealth of the defendant." (Rest., Contracts (1932) § 348, com. a, pp. 591-592. See also 3 Williston, Contracts (3d ed. 1960) § 536, p. 831 & fn. 9.)

instant case: defendant contracted with plaintiff, an architect, for the preparation of plans for a resort. After plaintiff complied with defendant's repeated request that plaintiff proceed with final specifications, defendant abandoned the project.

In plaintiff's action in that case for the reasonable value of his services, defendant contended that plaintiff was not entitled to relief in quantum meruit since defendant had received no benefit from plaintiff's services: as defendant argued, "the plans prepared were not such as he could use." (105 Cal.App.2d at p. 477.) The court pointed out, however, that the satisfaction of his request for performance constituted adequate "benefit" to defendant: "In addition to the contract, the evidence of the plans submitted, the changes requested and the many conferences and letters written, strongly support the conclusion that the [defendant] desired and ordered plans for the project as a whole. While he may have intended, at times, to erect a few buildings at first and to add more later, he kept the plaintiff working on plans for the overall project. In the meantime he was unsuccessful in his attempt to borrow money on the project . . . and he finally abandoned the project. *He derived the benefit he had in mind,* and the fact that he later decided not to use the plans he had ordered in no way indicates an absence of benefit, within the meaning of the *quantum meruit* rule." (Italics added.) (*Id.*)[6]

Indeed, the issue whether we should broaden the basis of quasi-contractual recovery so as to prevent any unconscionable injury to the plaintiff, is not a novel one for our court. In his dissenting opinion in *Coleman Engineering Co.* v. *North American Aviation, Inc.* (1966) 65 Cal.2d 396 [55 Cal.Rptr. 1, 420 P.2d 713], Chief Justice Traynor cogently urged that we abandon the unconscionable requirement of "benefit" to the defendant and allow recovery in quantum meruit whenever a party acts to his detriment in reliance on another's representation that he will give compensation for the detriment suffered.

In *Coleman,* plaintiff sued for breach of a contract for the construction of missile trailers. Plaintiff had submitted a bid for the project based on its interpretation of defendant's specifications. Defendant accepted the bid without studying it, notified plaintiff that plaintiff was the successful bidder, and sent several telegrams urging that plaintiff commence construction. After plaintiff began work, a controversy arose over the height of the trailers' center of gravity. Because of a discrepancy between

---

[6]Neither *Williams* v. *Dougan, supra,* nor *Bodmer* v. *Turnage, supra,* refers to the decision in *Rotea* v. *Izuel, supra,* 14 Cal.2d 605.

the defendant's specifications and plaintiff's original interpretation, plaintiff was compelled to alter much of its completed work, thereby substantially raising its costs. While negotiations over a price adjustment ensued, plaintiff continued working at defendant's request. When the parties failed to reach an agreement, defendant awarded the construction contract to another bidder.

The majority in *Coleman,* affirming the trial court's determination that defendant had breached a valid contract, upheld the court's award of damages to plaintiff. (65 Cal.2d at pp. 406-407.) Writing a separate opinion,[7] however, former Chief Justice Traynor argued that the contractual negotiations never gave rise to a binding contract because of a failure to agree on the specifications, time of performance, and price. Plaintiff's remedy should accordingly have been in quasi-contract for performance in good faith under an unenforceable contract.

The view adopted by the former Chief Justice raised the fundamental question whether a plaintiff may obtain restitution from a defendant not "benefited," since, as the Chief Justice acknowledged, defendant procured the entire performance elsewhere and enjoyed no advantage from plaintiff's partial performance. As the Chief Justice pointed out, however, "[h]ad the contemplated contract envisaged the performance of services instead of the production of trailers, there would be no doubt that Coleman could recover the reasonable value of its work whether or not it benefited North American." (65 Cal.2d at p. 419.)

The Chief Justice continued, "When one person performs services at the request of another, the law raises an obligation to pay the reasonable value of the services. (*Williams* v. *Dougan,* [*supra*].) . . . Although this rule has usually been applied when services or work and labor were requested in their own right, rather than as incidental to the construction of a specified item to be sold to the defendant (see *Williams* v. *Dougan, supra,* . . .; *Bodmer* v. *Turnage,* [*supra*]), there is no basis for limiting the rule to the performance of services. If in fact the performance of services has conferred no benefit on the person requesting them, it is pure fiction to base restitution on a benefit conferred. '[I]t is submitted that allowing a recovery in these cases on a theory of benefit conferred is purely fictional, and that the real basis is a moral obligation to restore to his original position a party who has acted to his detriment in reliance on a representation, technically unenforceable, by another that he will give value for the detriment suffered.' (Note (1928) 26 Mich.L.Rev. 942, 943.)" (65 Cal.2d at p. 419.)

---

[7]*Id.,* at page 410 (Mosk, J., conc.).

Thus Chief Justice Traynor would have awarded plaintiff recovery notwithstanding defendant's lack of "benefit." As the Chief Justice concluded, "The one rendering performance and incurring expenses at the request of the other should receive reasonable compensation therefor without regard to benefit conferred upon the other. Such a rule places the loss where it belongs—on the party whose requests induced performance in justifiable reliance on the belief that the requested performance would be paid for." (65 Cal.2d at p. 420.)[8]

The determination to protect "justifiable reliance" forms not only the inspiration for Chief Justice Traynor's application of a quasi-contractual remedy in *Coleman,* but also provides the basis for several parallel contractual doctrines as well. The first of these doctrines rests on the theory that "part performance" of an otherwise invalid contract may satisfy the purposes of the statute of frauds. Thus a court may award damages based on an unenforceable contract if unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position. (See, e.g., *Paul* v. *Layne & Bowler Corp.* (1937) 9 Cal.2d 561, 564-565 [71 P.2d 817]; Code Civ. Proc., § 1972.) Closely allied to the doctrine of part performance is the notion that reliance by one party on an oral contract may "estop" the other from setting up a defense based upon the statute of frauds. (See *Redke* v. *Silvertrust* (1971) 6 Cal.3d 94 [98 Cal.Rptr. 293, 490 P.2d 805], cert. den., (1972) 405 U.S. 1041 [31 L.Ed.2d 583, 92 S.Ct. 1316].)

Finally, section 90 of the Restatement of Contracts—the so-called "promissory estoppel" section—provides that reasonably expected reliance may under some circumstances make binding a promise for

---

[8]Courts in other jurisdictions have granted recovery in quantum meruit for one party's detrimental reliance on another's request for performance. In *Abrams* v. *Financial Service Co.* (1962) 13 Utah 2d 343 [374 P.2d 309], the court held that a prospective vendor could recover for work and material expended on his own property in reliance on a void or unenforceable contract for its sale. As the court stated: "The basis for the recovery is the prospective vendee's request that the property be suited to his needs. Although the vendees here received no benefit from the expenditure and are relieved from performance of the contract, they are not relieved of their promise, which the law implies, to reimburse defendant for the expenditures made in preparing the property for plaintiffs' use." (*Id.,* at p. 346.)

See also *Kearns* v. *Andree* (1928) 107 Conn. 181, 187 [139 A. 695], in which the court reached the same conclusion on similar facts, stating: "The basis of that [implied promise] is that the services have been requested and have been performed by the plaintiff in the known expectation that he would receive compensation, and neither the extent nor the presence of benefit to the defendant from their performance is of controlling significance." And see *Wyman* v. *Passmore* (1910) 146 Iowa 486 [125 N.W. 213]; *Randolph* v. *Castle* (Ky. 1921) 228 S.W. 418; *Clement* v. *Rowe* (1914) 33 S.D. 499 [146 N.W. 700].

which nothing has been given or promised in exchange.[9] In *Raedeke v. Gibraltar Savings & Loan Assn.* (1974) 10 Cal.3d 665 [111 Cal.Rptr. 693, 517 P.2d 1157] we explained that a court may invoke the doctrine of promissory estoppel embodied in section 90 to bind a promisor " 'when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement.' " (*Id.,* at p. 672, fn. 1.)[10]

In view of the equitable considerations lying at the foundation of these several doctrines, and reflected in the opinion in *Coleman,* we conclude that compensation for a party's performance should be paid by the person whose request induced the performance.[11] In light of this conclusion, the portion of the judgment denying plaintiff recovery with respect to the Pillow property must be reversed. As we have explained, plaintiff's evidence indicated that he had performed services and furnished materials in work on the Pillow property at the urgent request of defendant. Moreover, according to plaintiff, the work was performed under circumstances in which plaintiff reasonably relied upon the belief that defendant would pay for it.

---

[9]Section 90 provides, "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (Rest., Contracts (1932) p. 110.)

[10]As Professor Gilmore states, "As we might expect, the refusal to give protection in the 'benefit conferred' cases has been gradually suffering a reversal. The difficulty which the courts have had with such cases is, perhaps, reflected in the variety of explanations which have been offered to justify the plaintiff's recovery. The old variant of the common law action of assumpsit known as indebitatus assumpsit has been a useful crutch to explain why plaintiff recovers, not, of course, strictly in contract, but in quantum meruit. More adventurous courts have turned to the idea of a 'contract implied in law,' a 'quasi-contract'—not really a contract, a legal fiction necessary to promote the ends of justice and, in particular, to prevent 'unjust enrichment.' Rules of 'substantial performance' were developed to protect plaintiffs who had almost, but not quite, completed performance. And reputable courts have even suggested that plaintiffs, conceded to be in willful and substantial default, should nevertheless recover the value of whatever it is they have conferred on the defendant. The rejection of classical theory has thus been proceeding, albeit in a confused and sprawling pattern, on the benefit side . . . ." (Gilmore, The Death of Contract (1974) pp. 73-74.)

[11]Compare *Palmer v. Gregg* (1967) 65 Cal.2d 657 [56 Cal.Rptr. 97, 422 P.2d 985], in which plaintiff sought to recover both the reasonable value of nursing services which she rendered to a third party at defendant's request and reimbursement for the loss of necessary gardening services performed at her house during her absence. While plaintiff recovered the former at trial, on appeal we denied recovery for plaintiff's personal gardening expenses: "The rule espoused in the dissenting opinion of Chief Justice Traynor in [*Coleman*] is inapplicable because, in contrast to the present case, the expenditures in *Coleman* were made *at the request* of the obligor . . . ." (Italics in original.) (*Id.,* at p. 661, fn. 1.)

In denying plaintiff recovery for such work, the trial court rested solely on the broad implications of our *Rotea* decision. Since we have disapproved those implications, we reverse the trial court's ruling. On remand, the trial court should determine, under the principles set out in this opinion, whether plaintiff is entitled to recover under quantum meruit with respect to the Pillow property and, if so, the extent of the award.

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

Bird, C. J., Mosk, J., and Newman, J., concurred.

Richardson, J., concurred in the result.

**CLARK, J.,** Concurring and Dissenting.—Defendant William Low Company owning 17 acres of property acquired a contract right to purchase the adjoining 17 acres (the Pillow property) intending to construct a mobile home park on the 34 acres. A special use permit allowing construction of a mobile home park on the Pillow property was to expire on 29 May 1971. After more than two months of negotiations between plaintiff, a building contractor, and defendant William Low, president of defendant company, agreement was reached for plaintiff to build the park for $892,557.86. On 16 April 1971 counsel for Low and the company sent to plaintiff's counsel a letter of intent to accept plaintiff's bid. The letter stated that acceptance was subject to defendants' obtaining requisite financing and plaintiff furnishing a construction bond. Neither condition was met.

The letter concluded: "It is my client's further understanding that in return for this letter of intent and in order to keep a conditional use permit effective, your client will commence immediate framing of a proposed laundry room on the subject property and move some equipment on said premises by Monday, April 19, 1971."

Subsequently, defendant Low on several occasions requested plaintiff to commence work to preserve the permits. Defendants never made an independent, express promise to pay for such work.

Late in May plaintiff commenced work on both parcels. He claimed that about a week later he learned defendants had not obtained the requisite financing. Plaintiff stopped work and commenced this action 14 June 1971.

The complaint states four causes of action: breach of contract, quantum meruit, fraud, and negligent misrepresentation. When the matter came on for trial on 17 May 1976, the trial court granted judgment on the pleadings on all causes of action except the quantum meruit count.

The trial court awarded recovery against defendant company in quantum meruit for the work done on its property. The court denied any recovery for the work done on the Pillow property. The court also denied any recovery against defendant Low.

The court explained its ruling denying recovery for improvements on the Pillow property:

"Generally speaking, the court has a tendency to believe the testimony of Mr. Earhart and to disbelieve the testimony of Mr. Low. I don't think Mr. Low was being truthful with us. I think he remembered very well the incidents that gave rise to this aborted transaction, and I think he just conveniently forgot such things as a telephone call.

"So in reaching the conclusions the court reaches, it is putting essentially no weight on Mr. Low's testimony.

"Now, having said that, where are we? Because of the lateness of the bringing of this case to trial and the defects in the pleadings, the plaintiff was able to go forward only on one cause of action, and that cause of action was a cause of action in quantum meruit or that equitable remedy which accords to a person the fair value of something rendered to another in various situations. This is one of those situations, a situation where services were rendered in the expectation of a binding contract which never materialized.

"Even discounting Mr. Low's testimony, I think it is fair to say that there is some element of mistake and misunderstanding in this week's period of time when people thought, or some people thought, the financing was available and it turned out it actually wasn't available.

"This is, then, an appropriate case for recovery for the fair market value of whatever was produced, and that leads us to a lot of problems, because, again, the plaintiff's case is very deficient in terms of proof.

"First of all, we know that the services were furnished both to the Pillow property and to the Low property, and it is an established proposition of law in California, as stated by Mr. Grauf, that you can't get

recovery for services furnished to a third person, even though the services were furnished at the request of the defendant, and I am now referring to the same general Witkin citation which has been used by Mr. Grauf at page 61.

"Now, you can quarrel with that law, I suppose, and under certain circumstances there might be exceptions to it, but this case would seem to be one that applies on all grounds to that principle of law. So the plaintiff can't recover for services furnished Mrs. Pillow."

Where one person renders services at the request of another and the latter obtains benefits from the services, the law ordinarily implies a promise to pay for the services. (*Palmer* v. *Gregg* (1967) 65 Cal.2d 657, 661 [56 Cal.Rptr. 97, 422 P.2d 985]; *Rotea* v. *Izuel* (1939) 14 Cal.2d 605, 608 [95 P.2d 927, 125, A.L.R. 1424]; *Drvol* v. *Bant* (1960) 183 Cal.App.2d 351, 356 [7 Cal.Rptr. 1]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) pp. 60-61.) It is not entirely clear whether these cases are based on a contract implied by law to prevent unjust enrichment (*Rotea* v. *Izuel, supra*, at p. 608) or implied in fact reflecting an agreement by conduct (1 Witkin, *supra*, p. 60).

Neither principles of unjust enrichment nor of implied in fact contracts require imposing upon defendant an obligation to pay for improvement to the Pillow property in the circumstances before us.

Unjust enrichment presumes some benefit to the persons unjustly enriched sufficient to warrant implication of a promise to pay. Restatement, Restitution (1937) section 1, comment a, provides: "A person is unjustly enriched if the retention of the benefit would be unjust (see Comment *c*)."

Comment c provides: "Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor. Thus, one who improves his own land ordinarily benefits his neighbors to some extent, and one who makes a gift or voluntarily pays money which he knows he does not owe confers a benefit; in neither case is he entitled to restitution. . . ."

In *Rotea* v. *Izuel, supra,* 14 Cal.2d 605, 610-611, it was held that an obligation will not be implied in law "where the direct benefit is received

by a third party and the only benefit received by the defendant is the incidental benefit which he may find in the satisfaction of obtaining compliance with his request. [Citations.]" Absent promise of payment, a person who does no more than request an attorney to consult with a potential client does not incur an obligation to pay the attorney for the consultation.

The same rule should apply where the only benefit obtained by the defendant from the requested performance is substantially similar to the benefit received by the plaintiff from the same act. The hitchhiker should not be held to have promised to pay for his ride in the absence of a promise to pay. He and the person providing the ride receive the same benefit from the ride. A defendant who has solicited bids should not be held to have promised to pay the expenses incurred in preparing the bids unless he has expressly promised to do so. The bid provides substantially the same benefit to the one who solicits and the bidder—the opportunity to enter into a contract. Absent express agreement to pay, the potential customer does not obtain a cause of action for services rendered when he accepts the retailer's request to examine his merchandise, nor does the salesman who responds to the potential customer's requests for assistance. Again, the benefits are substantially the same—the opportunity to consummate a transaction.

When the defendant receives benefits in addition to those received by the plaintiff or which are substantially different, unjust enrichment may be remedied through imposition of a duty to pay. But so long as the only benefits received by the defendant from plaintiff's conduct are substantially equivalent to those obtained by the plaintiff, mere compliance with a request is not a sufficient benefit to warrant imposition of such duty absent a promise to pay. Absent agreement to pay, it would be mere speculation to conclude the benefit to the defendant rather than the substantially equivalent benefit to plaintiff was the motivating force for plaintiff's performance.

The improvements made to the defendant company's property inured to the benefit of defendant company, and the trial court properly determined those improvements warranted imposition of a duty to pay their reasonable value. However, the improvements made to the Pillow property did not inure to the use and enjoyment of defendant company but to the owner of that property and recovery was properly denied.

In one respect plaintiff's performance on the Pillow property did confer a benefit to the defendant company which in other circumstances

might warrant recovery. Defendant received an advantage comparable to the extension of time to perform a contract or exercise an option. If the use permit had lapsed, the value of defendant company's right to purchase the Pillow property would have been impaired. It is doubtful whether defendant company would have continued its search for financing, and whether potential lenders would still be interested in the project. The fact that defendant company did not ultimately acquire the Pillow property does not mean it failed to receive contractual advantage from plaintiff's activity in preserving the use permit. To the contrary, some benefit was realized through increasing the time for defendant company to obtain financing for its project.

However, plaintiff secured a substantially similar benefit from his performance. Plaintiff had a contract to build the mobile home park for $892,557.86 contingent upon defendant obtaining financing. If the use permit lapsed, it would be unlikely that the transaction would go forward. By commencing work to maintain the permit, thereby increasing the time to obtain financing, plaintiff also increased the likelihood that his contract would be effective. Because the benefits to plaintiff are substantially similar to those to defendant company, there is no unjust enrichment, and no basis for finding an implied in fact promise to pay.

In real property development and construction projects, it is common for developers, contractors, engineers, and attorneys to pool their talents and resources undertaking preliminary steps such as seeking financing and permits for the project. Should the project prove feasible and work commence, they expect to be rewarded for their efforts both for the preliminary steps and for further work on the project. If the parties are unable to complete their project and abandon it, it is apparent there is no enrichment unless there are some collateral benefits. While each party may have benefited from the undertakings of the other parties, the benefits from such performance do not result in unjust enrichment.

To impose an agreement to pay for the preliminary services based solely on requests—when the permits or financing cannot be obtained —results in unfortunate consequences. Because each of the parties is ordinarily requesting the others to do their jobs, imposition of an agreement to pay would mean that the developer must pay the contractor for his efforts in preliminary construction while the contractor must pay the developer for his efforts to secure permits and financing. Similar recoveries and liabilities would exist for the other parties. Rather than impose such cross-obligations, we should hold that each party should be responsible for his own undertakings.

There is no reason to reach a different result in the instant case. In the original agreement it was provided that defendant company's obligation to pay was conditioned upon securing financing and a bond, and that plaintiff was to commence work "in return for this letter of intent and in order to keep a conditional use permit effective." Although the trial judge determined that defendant company requested plaintiff to commence work, he did not find that defendant company made an independent promise to pay or was guilty of misrepresentation.

The majority opinion concludes that, irrespective of benefit to the defendant, "compensation for a party's performance should be paid by the person whose request induced the performance." (*Ante,* p. 515, fn. omitted.) The majority rule is too broad. As the trial judge recognized, there may be some situations where recovery in quantum meruit is appropriate where the only benefit received is compliance with a request. However, the trial judge properly concluded this is not one of them.[1]

I would affirm the judgment.

Manuel, J., concurred.

---

[1] The majority rely upon Chief Justice Traynor's dissenting opinion in- *Coleman Engineering Co.* v. *North American Aviation, Inc.* (1966) 65 Cal.2d 396, 410 [55 Cal.Rptr. 1, 420 P.2d 713]. However, he was not considering a case where the benefits of the performance inured to a third party and the only benefit received by the defendant was substantially similar to a benefit received by the plaintiff. The Chief Justice recognized: "When performance is rendered by one party in the mistaken belief that an enforceable contract exists, his remedy is in quantum meruit. (See 3 Corbin, Contracts (1960 ed.) § 599, pp. 593-595, fn. 22, citing *Peerless Glass Co.* v. *Pacific etc. Co.,* 121 Cal. 641, 647 [54 P. 101].) Ordinarily, the measure of recovery is the reasonable value of benefits conferred upon the other party. (*Challenge Cream & Butter Assn.* v. *Royal Dutch Dairies,* 212 Cal.App.2d 901, 908 [28 Cal.Rptr. 448]; *Townsend Pierson, Inc.* v. *Holly-Coleman Co.,* 178 Cal.App.2d 373, 378 [2 Cal.Rptr. 812]; *Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325, 340 [263 P.2d 655].) If the other party received no benefit, there is ordinarily no obligation to make restitution. (*Ibid.*)" (65 Cal.2d at p. 418.)

Moreover, the Chief Justice's exception to the general rule that benefit is essential to obligation to make restitution is subject to its own limitation: "When *two parties mistakenly believe* that a contract exists between them but the agreement is too uncertain and indefinite to be enforced, the one rendering performance and incurring expenses at the request of the other should receive reasonable compensation therefor without regard to benefit conferred upon the other." (Italics added; 65 Cal.2d at p. 420.) The instant case is not one of mutual mistake. According to the trial judge only plaintiff was laboring under a mistake.